351 F.2d 525
 RETAIL CLERKS UNION, LOCALS 137, 324, 770, 899, 905, 1167, 1222, 1428 AND 1442, Appellants, and
Ralph E. Kennedy, Regional Director of the 21st Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Appellant,
v.
FOOD EMPLOYERS COUNCIL, INC., Appellee.
 No. 20201.
 United States Court of Appeals Ninth Circuit.
 October 19, 1965.
 Rehearing Denied December 23, 1965.
 
 William B. Irvin, Gilbert, Nissen & Irvin, Beverly Hills, Cal., for appellants Retail Clerks Union, Locals 324, 899, 1167, 1428 and 1442.
 George L. Arnold, Kenneth M. Schwartz, Robert M. Dohrmann, Arnold, Smith & Schwartz, Los Angeles, Cal., for appellants Retail Clerks Union Locals 770, 137, 905 and 1222.
 Joseph M. McLaughlin, Los Angeles, Cal., for appellee Food Employers Council, Inc.
 Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, Marvin Roth, Frank H. Itkin, Attorneys, Washington, D. C., for appellant N. L. R. B.
 Charles K. Hackler, Julius Reich, Brundage & Hackler, Los Angeles, Cal., amici curiæ Jt. Council of Teamsters No. 42.
 Carl M. Gould, Stanley E. Tobin, Hill, Farrer & Burrill, Los Angeles, Cal., amici curiæ Amer. Research Merchandising Inst., U. S. Servateria Corp., and Westco Merchandising Co.
 Before BARNES, HAMLIN and MERRILL, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 This is an appeal by the Regional Director of the NLRB and various locals of the Retail Clerks Union from a district court order granting a temporary injunction, pursuant to a petition by the Regional Director, to enjoin the commission of unfair labor practices by the Clerks Union. Jurisdiction of the district court was based on Section 10(l) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(l). This court has jurisdiction of the appeal from the grant of a temporary injunction by the district court under 28 U.S.C. § 1292(a) (1).
 
 I. STATEMENT OF FACTS
 
 2
 The underlying controversy in the present appeal stems from a collective bargaining agreement of March 14, 1964, between the Food Employers Council (appellee here) and the Retail Clerks Union (appellant here) which became effective April 1, 1964. Article I of this agreement required the employers to cease doing business with, or selling the products of, various third parties unless those third parties became members of the Clerks Union and bound themselves under the agreement. The Joint Council of Teamsters No. 42, American Research Merchandising Institute, U. S. Servateria Corporation and Wesco Merchandising Co. (all amici curiae here) lodged a complaint with the NLRB on May 7, 1964, alleging that these provisions of Article I constituted an illegal "hot-cargo" agreement in violation of Section 8(e) of the National Labor Relations Act, as amended. On June 30, 1964, the Regional Director filed a petition in the district court requesting a temporary injunction pursuant to Section 10(l) of the National Labor Relations Act, alleging that he had reasonable cause to believe that Article I of the agreement contained provisions which violated Section 8(e) of the National Labor Relations Act. On the same day, June 30, 1964, the Regional Director and the Clerks Union entered into a stipulation that the latter would refrain from unfair practices under the April 1, 1964 agreement, pending determination of the validity of the agreement by the NRLB This stipulation was approved by the district court on the same day, June 30, 1964. The petition for temporary injunction was dismissed on December 3, 1964.
 
 
 3
 Meanwhile, on November 10, 1964, Local 770 of the Clerks Union had demanded arbitration with the employers of the April 1, 1964, agreement, and on November 24, 1964, had filed suit to compel arbitration in Los Angeles County Superior Court. The Regional Director considered this attempt to compel arbitration a violation of the June 30, 1964 stipulation with the Clerks Union, and that it was itself, a further violation of Section 8(e) of the National Labor Relations Act. On January 8, 1965, the Regional Director filed a new verified petition for temporary injunction in the district court, pursuant to Section 10(l) of the National Labor Relations Act. The suit to compel arbitration was subsequently dismissed by the Superior Court, but by that time Local 770 of the Clerks Union and the employers had agreed to another date of arbitration.
 
 
 4
 Following the second (or January 8th, 1965) petition for temporary injunction, the Clerks Union and the Regional Director again entered into a stipulation, by the terms of which they agreed that arbitration would be permitted as to certain parts of Article I of the collective bargaining agreement which were not alleged to be violative of Section 8(e) of the National Labor Relations Act, subject to the condition that the results of any arbitration would have to be approved by the Regional Director before being put into effect. The new stipulation was filed for approval in the district court and was opposed by the third parties who had originally brought the charges before the NLRB and who appear as amici curiae here. On May 27, 1965, Honorable Peirson Hall, Judge of the United States District Court, Southern District of California, denied approval of the new stipulation. On June 3, 1965, the Regional Director moved for reconsideration, which was also denied, after a hearing before the district court on June 14, 1965. During the course of the June 14, 1965 hearing the parties to the injunction proceeding and the charging parties in the NLRB proceeding were heard with regard to the propriety of enjoining the arbitration proceedings between the Clerks Union and the Employers Council which had been rescheduled for July 5, 1965. The district court determined that the arbitration should be enjoined and instructed the Regional Director to supplement his original petition, which had included a prayer that arbitration of the attacked clauses of Article I of the collective bargaining agreement be enjoined, with a specific prohibition against the forthcoming July 5 arbitration. This was done.
 
 
 5
 On June 24, 1965, the district court entered a temporary injunction against the Clerks Union pursuant to Section 10(l) of the National Labor Relations Act, which included a prohibition against arbitration of all of Article I of the collective bargaining agreement. After Joint Council of Teamsters No. 42, one of the charging parties in the NLRB proceedings, objected that the injunction was too broad, the district court on June 25, 1965, modified its injunction of June 24th by an order nunc pro tunc (pursuant to Rule 60(a), Fed.R.Civ.P.) to limit the injunction against arbitration to those portions of Article I of the collective bargaining agreement which were in dispute before the NLRB. The Regional Director and the Clerks Union appeal from the injunction as modified.
 
 
 6
 The appellants petitioned this court for a stay of the injunction, since arbitration was scheduled for July 5, 1965. This petition was denied, but we granted an expedited hearing. By the same order, this court denied the charging parties in the NLRB proceedings permission to intervene as appellees, but granted them permission to appear as amici curiae.
 
 
 7
 II. TO WHOM WAS THE TEMPORARY INJUNCTION GRANTED?
 
 
 8
 Appellants, the Regional Director and Retail Clerks Union, contend that the district court erred in granting the injunction because the court did so, not at the request of the Regional Director, but at the request of the private third parties who were the "charging parties" in the NLRB proceedings. Appellants argue that since the Regional Director had changed his position in the district court from a petition for temporary injunction to a request for approval of a stipulation with the Clerks Union, the Regional Director was no longer seeking an injunction, and granting it over his protest constituted the grant of an injunction to private persons in violation of Sections 1, 4 and 7 of the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 104, 107, and the policy of Section 10(l) of the National Labor Relations Act which places in the Regional Director the responsibility for seeking injunctions in Section 8(e) cases.
 
 
 9
 This argument overlooks the fact that the Regional Director had himself twice petitioned the court for injunctions, regardless of later stipulations with the Clerks Union. Furthermore, Section 10(l) is mandatory, not discretionary, in nature and requires the Regional Director to seek injunctive relief when he has reasonable cause to believe that a Section 8(e) violation has occurred.[1] Hence the Regional Director was obligated to seek the injunction, and did so when he filed the petition for temporary injunction on January 8, 1965, in which he alleged that arbitration, or attempts to compel arbitration of the April 1, 1964 agreement constituted further Section 8(e) violations.
 
 
 10
 Nor did the district court err in permitting the charging parties to appear and present evidence in support of the injunction. Section 10(l) specifically provides that "Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony * * *." Cases relied upon by appellants, such as McLeod for and on Behalf of N. L. R. B. v. Business Machine and Office Appliance Mechanics Conference Board, 300 F.2d 237 (2d Cir. 1962), and NLRB v. Retail Clerks International Association, 243 F.2d 777 (9th Cir. 1956), dealing with the scope of participation to be permitted the charging parties, are inapposite here. In McLeod v. Mechanics Conference the charging party sought to introduce grounds for injunctive relief which were different than and in addition to those relied upon by the Regional Director in his petition to the district court. The court of appeals held that it could only award injunctive relief based on unfair labor practices urged by the Regional Director since only he could petition the court in a Section 10(l) proceeding, and had no jurisdiction to consider issues not raised by the Regional Director. In NLRB v. Retail Clerks International the third party was alone in petitioning the court for injunctive relief in order to protect an earlier order of the same court. This court held in that case only that the third party (one permitted to appear as amicus curiae) had no standing to seek to enforce an earlier decree which the NLRB, the party which had originally obtained the decree, did not feel was being violated. Both of these cases are distinguishable from the present facts where the charging parties did not petition the court independently, or for relief different than that sought by the Regional Director, but merely supported the original petition for injunctive relief requested by the Regional Director.[2]
 
 III. ALLEGED ABUSE OF DISCRETION
 
 11
 Appellants contend that the district court was limited to approving the stipulation offered by the Regional Director and abused its discretion in granting the temporary injunction instead. They argue that the injunctive relief available pursuant to Section 10(l) is merely ancillary to the proceedings before the NLRB and that relief under Section 10(l) cannot be broader than that determined by the Regional Director to be necessary to preserve the status quo pending NLRB determination of the unfair labor practice charges. Appellants would limit the discretion of the district court to the power to deny the Regional Director's petition for injunctive relief, but not to broaden the scope of relief sought or to grant the prayed for injunction after the Regional Director has changed his mind about its desirability.
 
 
 12
 Such a limitation would make the district court's action a mere rubber stamp for the Regional Director. The basic error in this position, as applied to the present controversy, has already been shown: under Section 10(l), the Regional Director's duty to seek an injunction when he has reasonable cause to believe that one of the sections of the National Labor Relations Act enumerated in Section 10(l) has been violated is mandatory. In this case he did in fact seek such an injunction. The district court had a petition for temporary injunction before it when the Regional Director decided to ask for something less. But Section 10 (l) gives this discretion as to whether or not an injunction should issue to the district court, not to the Regional Director, and neither requires nor suggests that the court should abdicate its responsibility and adopt the proposal of the Regional Director. By its terms Section 10(l), after making it obligatory for the Regional Director to petition the district court for "appropriate injunctive relief," states: "Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: * * *." (Emphasis added.)
 
 
 13
 The district court was thus faced with a situation where the Regional Director at first complied with the mandate placed upon him by Section 10(l) by seeking injunctive relief, and then sought to defeat the discretion vested in the district court under Section 10(l) by contending that the district court was powerless to do more than approve or disapprove the stipulation which the Regional Director, in his own discretion, sought to substitute for his earlier prayer for injunctive relief. In thus attempting to substitute his own discretion for that of the district court, the Regional Director misconceives the statutory scheme of a Section 10(l) proceeding. In such a proceeding, the Regional Director's discretion as to whether or not injunctive relief should be sought is limited to determining whether or not reasonable cause exists to believe that one of the unfair labor practice provisions enumerated in Section 10(l) has been violated. While it may be true that the Regional Director could not be compelled to institute proceedings under Section 10(l)[3] it does not follow that once having petitioned the court for injunctive relief pursuant to Section 10(l) the Regional Director retains discretion to dictate the precise form of relief to be granted by the district court.[4] Such a construction of Section 10(l) files in the face of the statutory language which obligates the Regional Director to seek appropriate injunctive relief, and places in the district court the discretion as to the form of relief to be granted.
 
 
 14
 Nor does the fact that injunctive relief pursuant to Section 10(l) is ancillary to proceedings before the NLRB to determine the truth of the unfair labor practice charges at issue mean that the recommendations of the Regional Director of the Board must be followed by the district court. Section 10(l) reflects a Congressional determination that the unfair labor practices enumerated therein are so disruptive of labor-management relations and threaten such danger of harm to the public that they should be enjoined whenever a district court has been shown reasonable cause to believe in their existence and finds that the threatened harm or disruption can best be avoided through an injunction. Schauffler for and on Behalf of N. L. R. B. v. Local 1291, Internat'l Longshoremen's Ass'n, 292 F.2d 182, 187 (3d Cir. 1961); Comment, 111 Pa.L.Rev. 460, 463-4 (1963). It is not for the Regional Director to substitute his own ideas of how best to deal with alleged unfair labor practices for those of the Congress.
 
 
 15
 When the district court issued its temporary injunction, it had before it: (1) the petition of the Regional Director alleging that he had reasonable cause to believe that the breach of the Clerks Union's earlier stipulation against arbitration and the contemplated arbitration of the collective bargaining agreement which they were attempting to compel constituted further Section 8(e) violations; (2) the Regional Director's "Memorandum of Points and Authorities in Support of Petition for Injunction," which includes an elaborate discussion of Board and court decisions holding that arbitration or attempts to compel arbitration of contract clauses alleged to constitute unfair labor practices are themselves Section 8(e) violations; and (3) evidence introduced by the charging parties at the hearing on the temporary injunction which tended to show that the points sought to be arbitrated by agreement between Local 770 of the Clerks Union and the employers were substantially the same as those clauses the arbitration of which the Regional Director had sought in his petition to have enjoined. In light of the allegations and evidence before the district court, the reliance of the court on McLeod for and on Behalf of N. L. R. B. v. American Federation of Television and Radio Artists, 234 F.Supp. 832 (S.D.N.Y.1964), in which arbitration of the contract clauses giving rise to Section 8(e) charges were enjoined, seems entirely proper and justified, and the decision to grant the temporary injunction, rather than approve the stipulation, was a valid exercise of the court's discretion.
 
 
 16
 IV. IS THE TEMPORARY INJUNCTION TOO BROAD?
 
 
 17
 Appellants contend that paragraph "c" of the temporary injunction of June 24, 1965, even as altered by the nunc pro tunc order of June 25, is excessively broad in that it enjoins arbitration of parts of the collective bargaining agreement beyond those alleged to violate Section 8(e) of the National Labor Relations Act. Although paragraph "c" was framed by the Regional Director, he contends that he should not be estopped from asserting its invalidity because he was instructed to insert it by the district court, pursuant to the request of the charging parties. An examination of the temporary injunction establishes to our satisfaction that this attack on the scope of paragraph "c" is without merit.
 
 
 18
 First, the January 8, 1965, petition by the Regional Director prayed for an injunction against "(a) Maintaining, giving effect to, demanding arbitration of, submitting to arbitration, or enforcing Article I, Sections A, B and F(1) and (2), of that certain Retail Food, Bakery, Candy, and General Merchandise Agreement entered into on or about April 1, 1964, * * *" insofar as those provisions required persons doing business with the employers to become members of the Clerks Union or to bind themselves under the April 1 agreement. Paragraph "c" of the June 24 injunction, as altered by the order nunc pro tunc, enjoins "(c) Engaging in or carrying on arbitration proceedings, now scheduled on or about July 5, 1965, or at any other time submitting to arbitration or arbitrating any issue or dispute arising out of the provisions of Article I of an Agreement dated March 14, 1964, between the Clerks and Employers and others, which are in dispute in proceedings before the National Labor Relations Board. * * *" A comparison of paragraph "a" of the Regional Director's prayer and paragraph "c" of the injunction as granted reveals that the contract provisions referred to in both are the same. The petition of the Regional Director alleged that arbitration or attempts to arbitrate the very sections of the collective bargaining agreement referred to in paragraph "c" constituted further Section 8(e) violations. The record contains ample evidence and citation of authority to substantiate the claim of the Regional Director, and supports the finding by the district court that the Regional Director had reasonable cause to believe, as required by Section 10(l), that arbitration of the challenged portions of Article I of the collective bargaining agreement referred to in both paragraphs "a" and "c" constituted further Section 8(e) violations.
 
 
 19
 Second, the petition of the Regional Director included as part of Exhibit H a letter of November 10, 1964, from Joseph T. DeSilva, Secretary-Treasurer of Clerks Union Local 770, to Robert K. Fox, President of the Food Employers Council, setting forth the grounds of dispute between the parties arising from the challenged portions of Article I of the collective bargaining agreement. The Regional Director used this letter as part of his proof that the grounds of dispute to be arbitrated were such that their arbitration or any attempt to arbitrate them constituted further Section 8(e) violations. Paragraph "c" of the temporary injunction specifically enjoins the arbitration of "the seven points designated to be in dispute in a letter dated March 19, 1965, from the Retail Clerks Union 770 to the President of Food Employers' Counsel (sic)." During the hearing on the motion for temporary injunction on June 14, 1965, the charging parties invited Judge Hall to compare the grounds of dispute set forth in the letters from Local 770 of November 10, 1964, and March 19, 1965. A comparison of the two letters supports the implied finding of the district court, embodied in paragraph "c" of its injunction, that the issues which the Clerks Union and the employers planned to arbitrate on July 5, 1965, were substantially the same as those issues which the parties had earlier sought to arbitrate, and the arbitration of which the Regional Director had alleged in his petition would constitute further Section 8 (e) violations.
 
 
 20
 Third, the nunc pro tunc order which is attacked by some of the appellants had the effect of increasing the scope of permissible arbitration of the remaining portions of the agreement and not of limiting them. The order made more specific which matters could be arbitrated by enjoining arbitration of only those provisions of Article I of the contract which were in dispute in proceedings before the NLRB, and permitting arbitration of the remainder of Article I. The effect of the order nunc pro tunc was thus to leave a wider scope of nonoffending issues open for arbitration.
 
 
 21
 Since both the contract provisions and the grounds of dispute in regard to which arbitration was enjoined in paragraph "c" were substantially the same as those which the petition of the Regional Director sought to have enjoined, and since we have already concluded that there was sufficient cause to support the grant of a temporary injunction in this case, we conclude that the injunction as granted was not unduly broad in its proscriptions.
 
 
 22
 The action of the court in granting the injunction is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Herzog v. Parsons, 86 U.S.App.D.C. 198, 181 F.2d 781, 784-786 (D.C.Cir. 1950); Douds v. Local 294 Intern. Broth. of Teamsters, 75 F.Supp. 414, 417-418 (N. D.N.Y.1947). Discussion of the mandatory nature of Section 10(l), based on legislative history, is to be found in Comment, "Temporary Injunctive Relief Under Section 10(l) of the Taft-Hartley Act," 111 Pa.L.Rev. 460 (1963), and Comment, 56 Mich.L.Rev. 102 (1957).
 
 
 [2]
 Because the proceedings below in this case show that the charging parties did not initiate the litigation in the district court but merely appeared in support of the petition of the Regional Director, as they are permitted to do by the terms of Section 10(l), we have not found it necessary to define the limits of the scope of participation to be permitted the charging parties. However, even if we agreed with the Regional Director that it was the charging parties who had procured the injunction, we cannot conclude that this would necessarily have constituted reversible error. The strict dichotomy between public and private interests which the Regional Director espouses in his effort to limit the participation of the charging parties has been subjected to well deserved criticism. In Comment, "The Charging Party Before the NLRB: A Private Right In the Public Interest," 32 U.Chi. L.Rev. 786 (1965), it is argued that in unfair labor practice proceedings before the NLRB the charging parties not only should, but do, have a right to a hearing when they object to a proposed settlement. Professors Jaffe and Davis go further and criticize the denial to beneficiaries of an NLRB order the right to petition the courts for enforcement. Jaffe, "The Public Right Dogma In Labor Board Cases," 59 Harv.L.Rev. 720 (1946); 3 Davis, Administrative Law § 22.13, at 273-75 (1958). The University of Chicago Comment recognizes that "While the technical arguments evoked by this denial of a hearing before the courts are quite different from those proposed to support the right to a hearing before the Board, many of the same policy considerations apply in both situations." 32 U.Chi.L.Rev. 786, 789 n. 23 (1965). We agree, and find no inconsistency in allowing the "public" interest to be represented by the "private" charging parties when the representative of the NLRB is either unable or unwilling to do so.
 
 
 [3]
 By analogy with Section 3(d) of the National Labor Relations Act, where it has been held that the Board officer cannot be compelled to issue a complaint. Hourihan v. NLRB, 91 U.S.App.D.C. 316, 201 F.2d 187 (D.C.Cir. 1952), cert. den. 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953); NLRB v. Lewis, 249 F.2d 832 (9th Cir. 1957), affirmed 357 U.S. 10, 78 S.Ct. 1029, 2 L.Ed.2d 1103 (1958); Comment, 56 Mich.L.Rev. 102, 105 n. 23 (1957)
 
 
 [4]
 In seeking to deny the discretion of the Regional Director in a Section 10(l) proceeding, to withdraw his petition for injunction or so modify his request that he no longer seeks an injunction, the amici curiae suggest an analogy with the limitations placed upon the Board's General Counsel after he has instituted a complaint before the Board. The amici ask us to extend our position in Frito Co. v. NLRB, 330 F.2d 458 (9th Cir. 1964), in which we held that once the General Counsel has "embarked upon the judicial process" by instituting a complaint before the Board he may not thereafter control the Board's consideration of the issues in the controversy, to apply to court proceedings instituted by the Regional Director as well. They point out that the mandatory nature of Section 10(l) would be defeated were the Regional Director to be permitted to withdraw his petition for injunctive relief whenever he chose, and further that the stipulation which he sought to substitute in this case would have the effect of converting the litigation into a Section 10(j) proceeding by reason of the discretion which it places in him as to whether or not to seek relief from the district court.
 We believe that the suggestion of the amici has merit, but find the extension of Frito unnecessary in this case where the statutory language itself makes it clear not only that the Regional Director must seek injunctive relief but that, once he has petitioned for such relief, the discretion as to the terms on which it is to be given is that of the district court and not of the Regional Director.