Joseph H. SOLIEN, Regional Director of the Fourteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellee,

v.

MISCELLANEOUS DRIVERS AND HELPERS UNION, LOCAL NO. 610, Affiliated With the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent-Appellee,

and

Sears, Roebuck and Co.,

and

Terminal Freight Cooperative Association and Terminal Freight Handling Co., Appellants.

Nos. 20407, 20418.

United States Court of Appeals, Eighth Circuit.

March 12, 1971.

Certiorari Denied June 7, 1971. See 91 S.Ct. 2206.

er, Fox & Grove, Chicago, Ill., for petitioner, Sears, Roebuck and Co.

Jerry Kronenberg, Borovsky, Ehrlich & Kronenberg, Chicago, Ill., Gerald Tockman, St. Louis, Mo., for petitioners, Terminal Freight Cooperative Association and Terminal Freight Handling Co.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, Glen M. Bendixsen, Chief of Special Litigation, Michael F. Rosenblum, Atty., N. L. R. B., Washington, D. C., for petitioner-appellee, Joseph H. Solien.

Norman W. Armbruster, Harry H. Craig, St. Louis, Mo., for respondent-appellee, Misc. Drivers and Helpers Union, etc.; Wiley, Craig, Armbruster & Wilburn, St. Louis, Mo., of counsel.

Before GIBSON and BRIGHT, Circuit Judges, and McMANUS, Chief District Judge.*

GIBSON, Circuit Judge.

The question presented in this consolidated appeal is whether a charging party in an unfair labor practice complaint before the National Labor Relations Board under § 8(b) (4) (B) of the National Labor Relations Act, 29 U.S.C. § 158(b) (4) (B), which requires the Board Regional Director to file for injunctive relief under § 10(*l*),[1] is entitled to the status of a full party litigant in the district court injunctive proceeding. And if not, is the charging party entitled to intervene as of right in that proceeding?

The appellants, Sears, Roebuck and Company, Terminal Freight Cooperative Association and Terminal Freight Handling Company,[2] filed separate charges with the Regional Director of the NLRB alleging that the appellee Union (respondent below) was conducting an illegal secondary boycott against the appellants

D. J. Sullivan, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., Gerard C. Smetana, Lawrence M. Cohen, Leder-

---

* Sitting by designation.

1. All section references, unless otherwise indicated, refer to the National Labor Relations Act, as amended.

2. Terminal Freight Handling Company was a co-charging party with Terminal Freight Cooperative Association. Both will hereinafter be referred to as "Terminal."

**126**

in violation of § 8(b) (4) (B). After determining that the complaint should issue, the Director filed for injunctive relief in the District Court pursuant to § 10(l).[3] Appellants sought to appear as full party litigants or, alternatively, to intervene in the injunctive proceeding. The Regional Director as petitioner and the respondent Union in the injunctive proceeding opposed the appellants appearing as full party litigants or intervening as parties on the stated ground that § 10(l) did not accord to charging parties full rights as party litigants in the injunctive proceeding.

The District Court, Chief Judge James H. Meredith, denied the appellants full party status and denied them the right to intervene, 321 F.Supp 245. However, appellants were permitted a limited appearance: the right to be present with counsel at the hearings, to introduce evidence, to file briefs, to be informed of all actions taken in the case, to keep the court advised of pertinent developments and to receive copies of all documents filed.

The Regional Director, as petitioner in the injunctive proceeding, reached a unilateral settlement stipulation in lieu of injunctive relief with the respondent Union over the objection of the charging parties, the appellants in this appeal. The Court required certain modifications in the settlement stipulation and then approved the stipulation as revised on July 9, 1970.

The Court-approved revised settlement stipulation is thought by the appellants to be inadequate for many reasons and from their viewpoint it might well be. However, the sufficiency or merits of the stipulation are not now before this court nor are the merits of the unfair labor practice charges pending before the Board. The only issue presented on this appeal is the propriety of the District Court's order denying full party status to the appellants in the § 10(l) proceeding.[4]

Following the approval of the revised stipulation in lieu of injunctive relief, the Board sought to dispose of the basic complaint against the Union for unlawful secondary boycott and picketing activity by means of a settlement stipulation purporting to remedy the charged unfair labor practice. On July 17, 1970, appellants filed a complaint in the District Court alleging that the Director had violated their rights under the Act and the Board's rules and regulations by excluding them from settlement discussions and depriving them of essential facts in connection with settlement deliberations, and sought to enjoin the Director from approving any settlement or engaging further in settlement discussions without the informed participation of the charging parties. On July 30, the District Court sustained the Director's motion to dismiss that cause for lack of jurisdiction. The charging parties appealed and sought a temporary stay of the District Court decision pending resolution of the appeal, which is now pending in a separate proceeding. This court granted the stay on August 7, but upon further consideration, vacated the stay on August 10.

---

3. Prior to the filing of the Director's petition for injunctive relief, both Sears and Terminal had filed a complaint seeking to compel the Director to file a petition for injunctive relief against the Union. After the filing of the Director's petition, Sears withdrew its complaint while Terminal moved only for a partial dismissal of its complaint (insofar as it sought to compel the Director to file for affirmative injunctive relief), and then amended its complaint to seek a declaratory judgment on the propriety both of the Director's initial refusal to proceed and of the still-existing internal agency rule which dictated or permitted his initial refusal to act. This case is currently pending in the District Court.

4. The appellants' request for a stay of the District Court's order approving the stipulation in lieu of injunctive relief pending appeal was first granted by this Court and then vacated on August 12, 1970. Appellants filed a petition for certiorari on this issue, which petition was denied by the Supreme Court on January 12, 1971.

On August 11, the charging parties filed in the United States Supreme Court an application for a temporary restraining order staying the District Court's order and temporarily enjoining the Director. This application was denied on August 19. Consequently, the settlement stipulation reached by the Regional Director and the Union dated July 24 is presently before the General Counsel for approval.

## I.

■■ We first consider the Union's contention that the issue of the charging party's status in § 10(*l*) proceedings is now moot since the dispute between the Union and the primary employer, Be-Rite Delivery Service, Inc., has been settled and there is no longer any strike or picketing activity of any kind. The Board at oral argument urged that the case in its present posture is not moot since the General Counsel has not yet approved the settlement stipulation reached by the Regional Director and the Union concerning the unfair labor practice charged. We agree with the Board.[5]

We do not think this case is moot because the probability of repetition of unlawful secondary boycott activity by the Union in the instant case is sufficient to satisfy the "mere possibility" test articulated in United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). In our view, a case is justiciable "if there is a possibility that the challenged activity will recur and if it is possible that the challenging party will be affected should recurrence take place * * *." Comment, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1690 (1970). See Diamond v. Bland, 91 Cal.Rptr. 501, 477 P.2d 733 (En banc 1970). Cf. Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Nonetheless, we are cognizant that should the pending settlement stipulation be approved by the General Counsel and thereafter by the Board prior to our decision, these proceedings would be mooted under the holding of Sears, Roebuck & Company v. Carpet Layers Local Union No. 419, 397 U.S. 655, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970). However, we feel in this case there are cogent reasons for passing upon the merits of the appeal even should the pending settlement stipulation be so approved. We are impressed with the argument of appellants that the alleged errors committed in the § 10(*l*) proceedings are inherently evasive of review since it is not feasible to perfect and obtain an appellate review prior to the Board's "final adjudication." Consequently, since we believe that the doctrine of mootness should not be used to perpetually frustrate judicial review of issues of public importance aris-

5. In Samoff for and on Behalf of N. L. R. B. v. International Association of Machinists District Lodge No. 1, 420 F.2d 952 (3d Cir. 1969), the Third Circuit held the execution of a collective bargaining agreement mooted an appeal on a similar issue. We are not disposed to follow this holding as we think it is contrary to the teachings of the Supreme Court in United States v. W. T. Grant Co., 345 U.S 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).:

"[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot. * * * A controversy may remain to be settled in such circumstances, * * * e. g., a dispute over the legality of the challenged practices. * * * The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." (Citations and footnote omitted.)

See also Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 426 (8th Cir. 1970); Bakery Sales Drivers Union v. Wagshal, 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed. 792 (1948); NLRB v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067 (1950); NLRB v. Raytheon Co., 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970).

ing in otherwise justiciable cases, the following comments are appropriate:

"If the Court is confronted with a substantial likelihood that an issue it believes moot will always arrive there in the same condition because of the inherent nature of the issue, the Court should not refuse review on the basis of mootness. This policy overrides the first policy of ensuring the effective functioning of the adversary system, so demonstration of the litigants' personal stake should not be required. The Court must acknowledge that the real choice is not between taking or not taking risks with the quality of the judicial process, but between securing or not securing the values of appellate review—stability, uniformity, and objectivity."

83 Harv.L.Rev. at 1692 (footnote omitted).

We conclude that these appeals are not moot; furthermore, the policy of ensuring judicial review of issues of public importance which are inherently evasive of review compels us not to refuse review on the basis of mootness. *See* ITT Lamp Division of the Int'l Telephone & Telegraph Corp. v. Minter, 435 F.2d 989 (1st Cir. 1970).

## II.

We next proceed to the merits of the appeal. Section 10(*l*) of the Act provides that when a charge is filed alleging an illegal secondary boycott, the Board's regional official shall give priority to the investigation of the charge and if, after investigation, the officer or regional attorney "has reasonable cause to believe such charge is true and that a complaint should issue," he shall petition the federal district court on behalf of the Board "for appropriate relief pending the final adjudication of the Board with respect to such matter." The statutory language on its face draws a distinction between the status to be afforded a labor organization against whom injunctive relief is sought by the Board and the charging party. Section 10(*l*) provides that service of legal process upon certain officers and agents of the union "shall constitute service upon the labor organization and make such organization a party to the suit." However, as to "any person involved in the charge," including the charging party, § 10(*l*) requires only that such person be served with notice of the filing of a § 10(*l*) petition and be "given an opportunity to appear by counsel and present any relevant testimony * * *." [6]

The Board's position in opposing full party status to charging parties in a § 10(*l*) proceeding for injunctive relief is based primarily upon the wording of § 10(*l*) and its legislative history. It is clearly stated that only the Board can petition for § 10(*l*) injunctive relief, and the Board can only petition when an unlawful secondary boycott is charged and its designated officer or regional attorney "has reasonable cause to believe such charge is true and that a complaint should issue." The injunctive proceedings are ancillary to the main unfair labor practice proceeding filed under § 10 (a) through (d) of the Act, which is committed solely to the Board for its determination subject to right of appellate review. The district court's function in the § 10(*l*) ancillary proceeding is limit-

---

6. Section 10(*l*), in pertinent part reads:

"(*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C), of section 158(b), of this title, * * * the preliminary investigation of such charge shall be made forthwith * * *. If, after such investigation, the officer or regional attorney * * * has reasonable cause to believe such charge is true and that a complaint should issue,

he shall, on behalf of the Board, petition [the appropriate] United States district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *."

ed to determining whether there is reasonable cause to believe that the unfair labor practice charge will be sustained before the Board and whether temporary injunctive relief would be just and proper under the circumstances. If the district court concludes that injunctive relief or a temporary restraining order is just and proper, it may grant such relief "pending the final adjudication of the Board with respect to" the unfair labor practice charged. The findings of the district court in a § 10(*l*) proceeding are not binding on the Board in deciding the case on the merits or on the Court of Appeals in reviewing the Board's decision under § 10(e) and § 10(f) of the Act. NLRB v. Denver Building Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); McLeod for and on Behalf of NLRB v. Local 25, Int'l Brotherhood of Electrical Workers, 344 F.2d 634 (2d Cir. 1965). Thus, a § 10(*l*) injunction is effective only during the pendency of the administrative proceedings and is not a final adjudication of the parties' rights on the merits.

The legislative history of § 10(*l*) makes clear that the power *to initiate* the injunction suit is restricted to the Board alone.[7] The courts have uniformly recognized this congressional mandate. Bakery Sales Drivers Union v.

Wagshal, 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed 792 (1948). The only remedy allowed a private party at his own instance is a suit for damages under § 303 of the Act, 29 U.S.C. § 187.

Appellants claim this legislative history is irrelevant to the question before us because they concede that charging parties cannot institute the injunction proceeding authorized under § 10(*l*). The ultimate question is the nature of the role charging parties may play in those proceedings *after* they have been instituted by the Board, and appellants contend that there is no basis to conclude that one whose vital interests are involved in a suit is precluded from functioning as a party therein because the right to institute is limited to another. It is urged that construing the statute to allow charging parties to appear as parties with a right to seek review of adverse judicial decisions would not be incompatible with the Board's position that it should retain substantial control of the proceedings.[8] Appellants further reason that since charging parties have party status in all proceedings before the Board,[9] whether expressly provided by Congress or not, Congress' failure to specifically label charging parties as parties in § 10(*l*) proceedings is no basis for holding they do not have

7. On the Senate floor, Senator Ball of Minnesota proposed an amendment to the proposed § 10(*l*), which would have allowed the injured party "suffering from a secondary boycott or jurisdictional strike * * * the right to go directly into a district court and seek injunctive relief." 93 Cong.Rec. 4835 (1947). Thereafter, Senator Taft of Ohio proposed that the language of the Senate bill authorizing the Board alone to obtain injunctive relief be retained and that the charging party be given instead the "right to sue for damages." 93 Cong.Rec. 4843–4844 (1947). The Ball amendment was subsequently defeated by a vote of 62 to 28. 93 Cong.Rec. 4847 (1947).

8. Appellants argue that the Board's control is evident in that only the Board can determine whether proceedings under § 10(*l*) should be instituted; only the Board can institute them; and only the Board can determine which violations of

the law are sufficient under the statute and what relief is appropriate in order to remedy the violations.

9. As charging parties before the NLRB, the appellants are recognized and accorded full party status under the NLRB regulations and thus possess all of the rights usually accorded a party litigant. By filing a charge, the charging party becomes a full party before the General Counsel in the investigative stage, before a Trial Examiner after Complaint has issued and with full appellate rights, before the Board on review of the Trial Examiner's decision, in the Court of Appeals after the Board's decision, and with the right independently to seek certiorari from the Supreme Court. These rights as a full party litigant appearing before the Board were fully recognized in UAW Local 238 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965).

**130**

such status. UAW Local 238 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965) is relied upon for the principle of statutory construction that the failure of Congress to explicitly articulate certain rights does not evidence a congressional intent that such rights do not exist.

■ We think the attempt to interpret § 10(*l*) so as to accord charging parties full party status in a § 10(*l*) proceeding fails because of lack of legislative support. While there exist cogent reasons why charging parties should be accorded full party status, these reasons should be addressed to Congress, the policy making branch of the government. In enacting § 10(*l*), Congress created a narrow exception to the Norris-LaGuardia Act in allowing injunctions to be issued in labor disputes. While the role of private parties in this facet of the labor law field was considered, such parties were not given the right to privately seek injunctive relief nor were they designated as or given the status of full party litigants. The interpretation argued by appellants twists the plain meaning of the statute as written and is at odds with the overall scheme of injunctive relief embodied in the National Labor Relations Act and the Norris-LaGuardia Act. An apt analysis of this point is made in Sears, Roebuck & Company v. Carpet Layers Local No. 419, 410 F.2d 1148, 1150 (10th Cir. 1969) (footnote omitted), vacated as moot, 397 U.S. 655, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970):

> "Accordingly, when an exception to that Act, such as is here involved, is relied upon to support the jurisdiction of the court, the language employed to articulate that exception will not be given any more expansive an interpretation than is clearly warranted. Viewed in that context, the limited rights conferred upon a charging party in a § 10(*l*) proceeding, the right 'to appear by counsel and present any relevant testimony,' must be taken to mean just that, no more and no less. To read into that restricted right of participation, the right to initiate appeals, a right traditionally available only to full party litigants, would not only violate every sound principle of statutory construction, but would require a complete disregard for the sensitivity of the labor injunction problem."

The two cases relied upon by appellants, UAW Local 238 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965) and Retail Clerks Union, Locals 137 et al. v. Food Employers Council, Inc., 351 F.2d 525 (9th Cir. 1965), are not particularly helpful to their position. Although the N.L.R. Act does not specifically provide for intervention at the appellate level, *Scofield* held that both the successful charging party and the successful charged party in NLRB proceedings have a right to intervene in the court of appeals' proceeding to review a final Board order. There were two very significant considerations which persuaded the Court to reach that conclusion. Allowing intervention would prevent duplication of appeals and would ensure that a charging party who prevailed before the Board after a full proceeding on the merits could not be deprived of the permanent relief which he sought and obtained through the administrative proceedings without having had an adequate opportunity to present his views.

Appellants contend in the alternative, that if their contention that they have the status of parties in the § 10(*l*) proceeding is rejected, the rationale of *Scofield* requires that they be allowed to intervene in the district court proceeding since the same private interests are at stake and the same possibility of injury to those vital interests exists. It is asserted that the principle recognized in *Scofield*—that the Board does not have exclusive authority to represent and protect the particular and private interests of charging parties—applies as a matter of logic to all proceedings in all tribunals where those interests are involved and require informed and interested protection.

Professor Moore has answered this contention quite well. He points out that *Scofield* was primarily grounded

"* * * on the policy of avoiding multiple appeals. That is, if the successful party in the proceeding before the Board were denied participation in the appellate review, and the court of appeals were to reverse the board's decision, the excluded party might later be able to raise a subsequent appeal. * * *

"Where the prevention of multiple appeals is not at stake, the rule should not apply. Thus when the NLRB seeks district court injunctive relief against the respondent, pending Board proceedings, the charging party has no right to intervene." 3B J. Moore, Federal Procedure ¶ 24.06 [3.–8] (2d ed. 1969) (footnotes omitted).

We also note that there is no language in § 10(*l*) comparable to that in § 10(f) relied upon by *Scofield* which would specifically authorize an appeal by the charging party when he is aggrieved by the denial of injunctive relief. There may be some question as to whether Congress recognized the existence of private rights within the § 10(*l*) injunctive process. *But see* Retail Clerks Union, 351 F.2d at 529 n. 2. The Senate report commenting on the proposed § 10(*l*) (which was substantially in its present form) stated:

"[W]e have provided that the Board, acting in the *public interest and not in vindication of purely private rights,* may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." S. Rep. No. 105, 80th Cong., 1st Sess. at 8 (emphasis added).

We conclude that the charging parties cannot obtain the status of parties in § 10(*l*) proceedings indirectly through intervention. *See* Sears, Roebuck & Co. v. Carpet Layers Local No. 419, 410 F.2d at 1151; San Francisco-Oakland News-

paper Guild v. Kennedy, 404 F.2d 37 (9th Cir. 1968).

*Retail Clerks, supra,* held that the district court has the power to grant a § 10(*l*) injunction originally petitioned for by the Regional Director notwithstanding the fact that the latter had meanwhile entered into a stipulation with the respondent union which he believed obviated the need for injunctive relief. The Ninth Circuit based its holding on the ultimate responsibility the district court has under § 10(*l*) to determine the appropriateness of temporary injunctive relief, reasoning that to hold otherwise would make the court little more than a rubber stamp for the Regional Director. The Court emphasized that its holding was concerned only with the respective roles to be played by the Regional Director and the district court and that it was not defining "the limits of the scope of participation to be permitted the charging parties." 351 F.2d at 529 n.2. It should be noted that the appeal was taken by the respondent union and that the court of appeals denied the charging parties' motion to intervene as parties, but granted them permission to appear as amici curiae. It of course follows *a fortiori* that the charging parties did not have full party status in the district court proceeding since their motions to intervene in the appellate proceedings were denied.

This latter holding of *Retail Clerks* also undercuts appellants' argument that they have a right to intervene in the § 10(*l*) proceedings as parties because they have an independent right to secure appellate review of the district court ruling. No court that has considered the question of the charging party's independent standing to seek appellate review of an adverse § 10(*l*) decision has accorded the charging party this right. Sears, Roebuck & Co. v. Carpet Layers Local No. 419, *supra;* Henderson for and on Behalf of NLRB v. Int'l Union of Operating Engineers Local 701, 420 F.2d 802, 806 n.2 (9th Cir. 1969); *see also* Kennedy for and on Behalf of NLRB v.

San Francisco-Oakland Newspaper Guild, 430 F.2d 317 (9th Cir. 1970). *But see* Houston Insulation Contractors Ass'n v. NLRB, 339 F.2d 868 (5th Cir. 1964) (2–1 decision involving an appeal from the Board's final order); McLeod for and on Behalf of NLRB v. General Electric Co., 366 F.2d 847 (2d Cir. 1966) (Caption refers to charging parties as intervenors in appeal from grant of § 10(j) injunction, but issue of intervention was not litigated), *judgment set aside and remanded for further proceedings,* 385 U.S. 533, 87 S.Ct. 637, 17 L. Ed.2d 588 (1967). Appellants' intervention argument based on their alleged right to appellate review of the district court's § 10(l) decision must fall.

Nonetheless, appellants contend that under the tests set out in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970), charging parties have standing to seek review of the district court's decision on temporary injunctive relief under § 10(l) since they have sustained injuries pursuant to an alleged misapplication of a statute under which they raise their claims. It is asserted that the charging parties were injured here because the stipulation in lieu of injunctive relief approved by the court was not an adequate substitute for injunctive relief.

Both *Data Processing* and *Barlow* presented the question of what interest one must allege in order to establish that he is sufficiently aggrieved by an *administrative* order to be entitled to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., of the adverse *agency* action. The decisions in both cases can fairly be said to represent a trend "toward enlargement of the class of people who may protest administrative action" where statutes are concerned. *Data Processing Service,* 397 U.S. at 154, 90 S.Ct. at 830. Since we are concerned with the issue of whether charging parties have the right to obtain appellate review from a judicial order in a § 10(l) proceeding and not the right of judicial review of administrative action, *Data Processing Service* and *Barlow* are not controlling.

■ The final contention made by appellants is that the district court committed reversible error in refusing to permit them to intervene as of right under Rule 24(a) (2), Fed.R.Civ.P., which provides that an applicant shall be permitted to intervene

" * * * when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

We disagree. Intervention as of right presupposes that the applicant has a right to maintain a claim for the relief sought, a right which the charging parties clearly do not have. It is also difficult for us to find that the Board, possessed of expertise developed through years of experience and which has independently determined that there is reasonable cause to believe that the secondary boycott charge will be sustained before the Board, will not adequately represent the interest involved. *See* Reynolds for and on Behalf of NLRB v. Marlene Industries Corp., 250 F.Supp. 722, 724 (S.D.N.Y.1966).

Judgment of the District Court denying appellants full party status and the right to intervene is affirmed.