Bernard SAMOFF, Regional Director of the Fourth Region of the National Labor Relations Board, For and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellant,

v.

The BUILDING AND CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, Respondent-Appellee.

No. 72-1759.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1972.

Decided Feb. 27, 1973.

Marvin Roth, N. L. R. B., Washington, D. C., for appellant.

Peter G. Nash, General Counsel, Julius G. Serot, Sp. Counsel to General Counsel, Marvin Roth, Supervisory Atty., Alan Banov, Atty., N. L. R. B., Bernard N. Katz, Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for respondent-appellee.

Shawe & Rosenthal, Baltimore, Md., Warren M. Davison, Washington, D. C., for Samuel E. Long, Inc., amicus curiae.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This is an appeal from an opinion and order of the district court [1] in which that court declined to issue a preliminary injunction under § 10(*l*) [2] of the Labor Management Relations Act of 1947, as amended 61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(*l*). This court has jurisdiction under 28 U.S.C. § 1292.

Samuel Long is a non-union contractor, i. e., none of his workers belong to unions. But sub-contracting on his construction jobs is often given to sub-contractors with union labor contracts. Appellee Building and Construction Trades Council is a trade association with area construction unions as members. Appellee decided to picket Long's latest job site, the district court found, solely to force him to employ only sub-contractors who use union labor, when and *if* he chooses to sub-contract. He would apparently have a free choice concerning whether to sub-contract. The appearance of the pickets caused a disappearance of all union labor at Long's latest job site, bringing work to a standstill.

Long filed a charge with the National Labor Relations Board, claiming that appellee was engaging in an unfair labor practice prohibited by § 8(b)(7)(C) [3] of

---

[1]. This decision is reported at 346 F.Supp. 1071 (E.D.Pa.1972).

[2]. Section 10(*l*) provides as follows:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph 4(A), (B), or (C) of section 8(b) or section 8(e) or section 8(b) (7), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstand-

ing any other provision of law: * * * *Provided further*, That such officer or regional attorney shall not apply for any restraining order under section 8(b)(7) if a charge against the employer under section 8(a)(2) has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue. Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further*, That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. * * * *"

[3]. Section 8(b)(7) of the Act, provides that it shall be an unfair labor practice for a labor organization or its agents:

"* * * * * *

"to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object

the Labor Management Reporting and Disclosure Act of 1959, 73 Stat. 519, 29 U.S.C. § 158(b)(7)(C). Pursuant to § 10(*l*), the Board moved for a preliminary injunction against the picketing pending a final decision by the Board[4] as to whether the picketing was in fact an unfair labor practice.

For there to be an unfair labor practice under § 8(b)(7), two conditions must be met. First, the introductory clause must be satisfied, i. e., a labor organization must be picketing an employer with an objective of forcing that employer to recognize the organization as a representative of his employees. Secondly,

one of the conditions in sub-paragraphs (A), (B) or (C) also must be met.

Although the Council's purpose was not to represent Long's employees but to force him to accept union sub-contractors, the Board still claims that the introductory clause was violated. The Board reasoned that contracting out of work which might be performed by Long's employees was a term or condition of employment of Long's employees. If, therefore, Long was forced to deal with the Council on the issue of sub-contracting, he would in effect be recognizing the Council as the agent of his employees on that particular issue. This issue is im-

thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

"(A) where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under Section 9(c) of this Act.

"(B) where within the preceding twelve months a valid election under Section 9(c) of this Act has been conducted, or,

"(C) where such picketing has been conducted without a petition under Section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of Section 9(c)(1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course

of his employment, not to pick up, deliver or transport any goods or not to perform any services. Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this Section 8(b)."

4. The merits of this case were decided by the National Labor Relations Board, *see* The Building and Construction Trades Council of Philadelphia and Vicinity and Samuel E. Long, Inc., 201 N.L.R.B. No. 42 (1973), after this opinion had been written and approved by the panel who sat on the case, but before it was filed. The Board has urged that we declare the matter moot and vacate the judgment of the district court. Appellee argues that the case is not moot, and we agree with it.

As mentioned above, the opinion had already been written and approved before the N.L.R.B. acted. The case had been argued in a complete adversary context, and the opinion was written while the dispute was very much alive. And even if the doctrine of mootness did apply, in appropriate circumstances we can still review § 10(*l*) proceedings because of the problems inherent in perfecting an appeal before the Board's final adjudication. *See* Solien v. Miscellaneous Drivers & Helpers Union, Local No. 610, 440 F.2d 124 (8th Cir. 1971), cert. denied Sears, Roebuck & Co. v. Solien, 403 U.S. 905, 91 S.Ct. 2206, 29 L.Ed.2d 680 (1971), reh. denied 404 U.S. 960, 92 S.Ct. 305, 30 L.Ed.2d 277 (1971). Of course, this opinion has no effect either on the right of the Board to petition for an order of enforcement of its decision pursuant to § 10(e) of the Act or the right of the Trades Council to appeal that decision pursuant to § 10(f).

portant enough to have a susbtantial impact on Long's employees. Therefore, it should be sufficient to satisfy the introductory clause. In support of this argument, the board relied heavily upon Dallas Building & Construction Trades Council v. N. L. R. B., 130 U.S.App.D.C. 28, 396 F.2d 677 (1968), enf'g. 164 N.L.R.B. 938 (1967) and also Lane-Coos-Curry-Douglas Counties Building & Construction Trades Council v. N. L. R. B., 415 F.2d 656 (9th Cir. 1969), enf'g. 165 N.L.R.B. 538 (1967). The NLRB felt that sub-contracting was an important issue to Long's employees even though the agreement the Council wanted Long to sign stated only that *when* he sub-contracted, he had to sub-contract with union employers.

The Board then claimed that sub-paragraph (C) of § 8(b)(7) was also violated since no petition for an election under § 9(C) had been filed and since none of the exceptions to § 8(b)(7)(C) had been met.

The district court, after a comprehensive consideration of the legislative history and related case law, determined that the union's picketing did not violate the introductory clause of § 8(b)(7). The Court reasoned that read in the context of sub-paragraph (C), the introductory clause means that for picketing to be "recognitional," it must have as a goal the recognition of the bargaining agent (here the Council) as the "full collective bargaining agent of those employees." According to the district court, since the effect of the proposed agreement at most would be that the Council would be the representative of Long's employees as to only one issue (sub-contracting), the introductory clause would not be violated. After holding that it was not required to issue a preliminary injunction where it disagreed with the legal theory upon which the Board relied, the court denied the Board's motion for that relief.

The Board has appealed from this denial. Its primary contention is that the district court applied an incorrect standard of law in determining when a § 10(*l*) injunction should issue. The Board claims that the district court misinterpreted our decision in Schauffler v. Local 1291, International Longshoremen's Association, 292 F.2d 182 (3d Cir. 1961).

In *Schauffler*, this circuit was reviewing the decision of a district court to grant a § 10(*l*) injunction. We said that whether such an injunction should be issued turned on whether there was reasonable cause to believe that an unfair labor practice listed in that section had been committed:

"The Board need not show that an unfair labor practice has been committed, but need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present. Nor need the Board conclusively show the validity of the propositions of law underlying its charge; it is required to demonstrate merely that the propositions of law which it has applied to the charge are substantial and not frivolous." Schauffler v. Local 1291, *supra* at 187.[5]

This test was designed to effectuate the Congressional purpose in enacting § 10(*l*).

"The Section 10(*l*) procedure reflects the congressional determination that certain unfair labor practices are so disruptive that where there is reasonable cause to believe that they are

---

5. Other circuits have set up similar standards envisioning a limited role for the district courts in these proceedings. McLeod v. National Maritime Union, 457 F.2d 1127, 1133 (2d Cir. 1972); Sachs v. Local Union No. 48, Plumbers, 454 F.2d 879, 882, 883 (4th Cir. 1972); San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544 (9th Cir. 1969); Local Joint Board v. Sperry, 323 F.2d 75, 77–79 (8th Cir. 1963); Madden v. International Organization of Masters, Mates & Pilots, 259 F.2d 312, 313–314 (7th Cir. 1958), cert. denied 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229 (1958); American Federation of Radio & Television Artists v. Getreu, 258 F.2d 698, 699, 701 (6th Cir. 1958).

being engaged in their continuance during the pendency of charges before the Board should not be permitted. S.Rep.No.105, 80th Cong., 1st Sess., pp. 8, 27.[6]

\* \* \* \* \* \*

"If, in a Section 10(*l*) proceeding, a district court or a court of appeals undertook to finally adjudicate such questions it would not be acting consistently with the congressional policy underlying Section 10(*l*). That Section's usefulness as a tool with which the status quo may be preserved pending final adjudication would be diminished insofar as the Board would be required to finally litigate questions of substance at a preliminary stage. Moreover, the court would not have the benefit of the Board's opinion on questions of fact and novel questions of labor law when making its decision. Thus, the court would, to some extent, usurp the Board's function as the primary fact finder in cases arising under the Act and its function as primary interpreter of the statutory scheme." Schauffler v. Local 1291, *supra*, 292 F.2d at 187, 188.

The district court noted that *Schauffler* set the applicable standard for determining when a § 10(*l*) injunction should be granted. But it went on to say:

"We do not read § 10(*l*), as thus construed, to require a District Court,

charged with granting injunctive relief under § 10(*l*) where it is 'just and proper', to grant relief based upon legal theories advanced by the Board, which, *while thoughtfully presented and not frivolous*, are, in the view of the Court, erroneous." (Emphasis added).

■ This is a misinterpretation of *Schauffler*. As dictated by that decision, the district courts have a limited role in § 10(*l*) proceedings. *Schauffler* requires only that the Board's theory be substantial and not frivolous; and if it is, it does not matter whether the district court ultimately agrees with it or not. The Board met its burden here for we feel that the district court's statement that the Board's theory was "thoughtfully presented and not frivolous" can fairly be interpreted to mean that the Board's theory was substantial and not frivolous.

■ This does not mean that a district court must always grant an injunction even though it disagrees with the Board's legal theory. If the district court can characterize the theory as insubstantial and frivolous, it may refuse the injunction. If the Board's theory cannot be so characterized, however, the district court must grant the injunction since this will best effectuate the Congressional policy against disruption of commerce expressed in § 10(*l*).[7]

6. The Senate Report on the bill that was enacted stated:

"Because of the nature of certain of these practices, especially jurisdictional disputes, and secondary boycotts and strikes for specifically defined objectives, the committee is convinced that additional procedures must be made available under the National Labor Relations Act in order adequately to protect the public welfare which is inextricably involved in labor disputes. "Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimina-

tion of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." S.Rep.No.105, 80th Cong., 1st Sess., pg. 8; I Legislative History of the Labor Management Relations Act, 1947, 414.

7. See fn. 6. In this case, for example, construction of a school was substantially delayed by the dispute between the parties.

Appellee argues that a motion for a preliminary injunction under § 10($l$) is addressed to the discretion of the district court and that its decision should not be reversed unless there has been a clear abuse of its discretion. *E. g.*, Samoff v. Williamsport Building and Construction Trades Council, 451 F.2d 272, 274 (3d Cir. 1971). It points out that *Schauffler* was an appeal from the grant of a preliminary injunction whereas this case is an appeal from a denial of such an injunction.

Appellee's argument could possibly be successful if we were reviewing the decision of the district court after it had applied the proper legal standard in reaching its decision. As previously mentioned, however, the district court misinterpreted *Schauffler* and thus applied an incorrect standard.

To accept appellee's argument and the district court's decision would circumvent the statutory process of review in these cases. We have no authority to decide these cases finally until the NLRB has acted on them. See § 10(e) and § 10(f) of the Labor Management Relations Act, *supra*. But if a district court were to determine that the Board's legal theory was incorrect, we would be able to review that determination since it is a question of law. If we made such a review we would be deciding many of these cases on the motion for a preliminary injunction and before the NLRB had a chance to act on them. Adhering to *Schauffler* will guard against premature review.

We emphasize that this decision should in no way be taken as approving or disapproving the ultimate merits of the Board's legal position as advanced in the district court. Presumably, that adjudication will occur pursuant to either § 10 (e) or § 10(f) of the Act.[8]

The decision of the district court will be reversed.