Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the National Labor Relations Board,

v.

HIGHWAY TRUCK DRIVERS & HELPERS, LOCAL 107, Warehouse, Employees Union Local 169, Garage, Parking & Service Station Employees, Local 596, Sugar Refinery Workers Local 1650.

Appeal of Highway Truck Drivers & Helpers Local 107.

Appeal of Warehouse Employees Union Local 169.

Appeal of Sugar Refinery Workers Local 1650, Appellant.

Nos. 11704–11706.

United States Court of Appeals
Third Circuit.

Argued Jan. 20, 1956.
Decided Feb. 23, 1956.

Raymond J. Bradley, Philadelphia, Pa.
(Thomas D. McBride, Michael von
Moschzisker, John Rogers Carroll, Mc-

Bride, von Moschzisker & Bradley, Philadelphia, Pa., on the brief), for appellant Highway Truck Drivers & Helpers Local 107.

Albert J. Bader, Philadelphia, Pa., for appellant Warehouse Employees Union Local 169.

Richard H. Markowitz, Philadelphia, Pa. (Louis H. Wilderman, Philadelphia, Pa., on the brief), for appellant Sugar Refinery Workers, Local 1650.

Winthrop A. Johns, Washington, D. C., for N. L. R. B. (Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Sidney D. Goldberg, National Labor Relations Board, Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is a labor relations board case. It comes up after a preliminary injunction in an action brought by the director of the fourth region on behalf of the National Labor Relations Board.[1] The injunction was rendered pursuant to the provisions of section 10(*l*) of the National Labor Relations Act as amended, 61 Stat. 136 (1947), 29 U.S.C.A. § 141 and following. The injunction enjoins the defendants from engaging in unfair labor practices in violation of section 8 (b) (4) (A) of the act which declares that it is unfair labor practice for "a labor organization or its agents"

> "(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer * * * or

other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * *."

It is to be observed that section 10(*l*), under which the issuing of a preliminary injunction is authorized, requires the district judge to find that there is reasonable cause to believe that a violation of the act as charged has been committed. Our review, therefore, is simply to determine whether the finding of a reasonable cause is not clearly erroneous under 52(a), Fed.Rules Civ. Proc. 28 U.S.C.,[2] and whether the form of relief granted shows a proper exercise of judicial discretion. This puts a lighter burden on both the district judge and ourselves than if final findings of ultimate fact were required. That task is, of course, for the labor relations board subject to review by this Court if and when enforcement is sought here.

The setting out of which the present controversy arises was and is an effort on the part of certain labor unions to unionize a large bakery and restaurant concern called Horn & Hardart Baking Company. This company is a multistate chain whose sales exceed 29 million dollars annually. Any suggestion that interstate commerce may not be affected by the stoppage of its business is too trivial at this stage of litigation under the labor relations act to treat seriously.[3] Several unions were involved in the effort to unionize Horn & Hardart. It is not suggested that this attempt is unlawful. What we have here is a charge that certain unions violated the statute by putting pressure on employees of other concerns with whom Horn & Hardart had business relations. That, in the language quoted above, constitutes a violation cognizable by the board and against

---

1. Schauffler v. Highway Truck Drivers & Helpers, Local 107 (E.D.Pa. July 27, 1955).

2. Shore etc. v. Building & Construction

Trades Council, 3 Cir., 1949, 173 F.2d 678, 681, 8 A.L.R.2d 731.

3. See Shore etc. v. Building & Construction Trades Council, supra note 2, 173 F.2d at page 680.

which a preliminary injunction may be issued, in a proper case, by the district court.

The first and hardest case to deal with is that of Local 107, Highway Truck Drivers & Helpers. Members of this local were undoubtedly and admittedly engaged in the effort to unionize Horn & Hardart and groups of them picketed that company's establishment at Tenth and Locust Streets, Philadelphia, during all the times here in question. Is this local proved to be a part of that which is charged as the unfair labor practice and here made subject to the injunction?

A very important, perhaps decisive, fact in answering this question has to do with the identity of one Zoroiwchak and one Brown. It was sought to be shown that these men represented and acted for Local 107 by proof of things they said to other people. Several conversations were introduced wherein Zoroiwchak said he represented 107. Evidence was received that Brown announced over a loud speaker that he was broadcasting for 107. This was over objection by counsel for 107 who objected then and still objects to the use of this evidence to establish agency on the part of Zoroiwchak and Brown.

■ In this objection we think that counsel for 107 had merit on his side. It is well established law that you cannot prove that A is an agent of P by declarations that A said so to numerous other persons. The reason is that such statements are hearsay and the evidence is inadmissible under the hearsay rule. So, for example, when Zoroiwchak told the manager of a vegetable growers' association that he represented Local 107 that statement cannot be used to prove that he did so represent the local although if the fact that he made the statement has any independent significance "as a verbal act" it, of course, may be proved. The above statement is well established law.[4] We really do not think there is any question about it and the district judge was perfectly aware of the rule. (Of course, this situation is to be distinguished from that where in a court proceeding a witness declares that he is agent for another. That is not hearsay and is not to be excluded as such.[5])

■ On the other hand agency may be established by other means than a direct statement from an alleged employer that someone is his agent or the showing of a written power of attorney on the part of a principal to have another act for him. It can, of course, be proved by circumstantial evidence as can any other proposition.[6] Thus, if a person is seen from time to time behind the counter of a store engaging in the selling of merchandise and taking payment for it, this fact tends to show that the person in question is working for the proprietor of the store. If a man in uniform regularly punches your commuter's ticket each morning that regular conduct surely tends to prove that the man with the punch in his hand is working for the railroad even though he carries no certificate with him and makes no statements. Did Zoroiwchak or Brown do anything which makes reasonable ground for thinking that they were representing Local 107 or in the alternative Local 107 plus other unions who were endeavoring to unionize Horn & Hardart?

It is admitted that Zoroiwchak was not a member of Local 107 and it was not suggested that Brown was either. Indeed, Brown was secretary-treasurer of a local of another union, Local 596 of the Garage, Parking & Service Station Employees. This local was not one of the four which were picketing the Horn

4. Restatement, Agency § 285 (1933); 4 Wigmore, Evidence § 1078, at p. 123 (3d ed. 1940). See, e.g., United States v. Konovsky, 7 Cir., 1953, 202 F.2d 721, 728; Dobbs v. Zink, 1927, 290 Pa. 243, 138 A. 758, 759.

5. Restatement, Agency § 285, comment a (1933).

6. Restatement, Agency §§ 15, 26 (1933). See, e.g., Bronson's Executor v. Chappell, 1870, 12 Wall. 681, 79 U.S. 681, 683, 20 L.Ed. 436; Zeligson v. Hartman-Blair, 10 Cir., 1943, 135 F.2d 874, 875.

& Hardart commissary and was not included in the injunctive relief.

The regional director contends however that the agency of Zoroiwchak and Brown for Local 107 does not depend upon their membership in that union but is established by their conduct along or near the picket line and at several business concerns in Philadelphia.

It was at these other commercial establishments that the improper secondary pressure was allegedly exerted. On May 6, 1955, the employees of Industrial Cold Storage & Warehouse Company refused to load a Horn & Hardart truck with meat which that concern had stored in the warehouse. Four days later the workers at The Great Atlantic & Pacific Tea Company declined to unload a truck, operated by the Philadelphia Vegetable Growers' Co-Operative Association, which had crossed the picket line at Horn & Hardart. On May 23, the employees at American Sugar Refining Company refused to load sugar onto a Horn & Hardart truck.

Zoroiwchak was in varying degrees connected with all three incidents, Brown only with the last. Zoroiwchak was seen "about" the warehouse when the Industrial employees refused to load the meat. He accompanied an unidentified man to A & P and was present when his companion informed the A & P receiver that the vegetable truck had crossed the picket line and that they were requesting the A & P workmen not to unload it. At American Sugar Zoroiwchak told the union steward, the foreman of the shipping department, and the men on the platform, not to load the Horn & Hardart truck with sugar. He also brought Brown and three or four other men to the scene. Brown in turn threatened the Horn & Hardart driver with violence and also told the men on the platform not to do the loading.

To bolster his contention that Zoroiwchak and Brown were acting as agents for Local 107, the regional director points to pictures taken in the vicinity of the Horn & Hardart picket line. As far as Zoroiwchak is concerned, these pictures show that from May 12 to May 19 he was present in that area on four days and that Brown was also present on several of these days. Zoroiwchak's car was on occasion parked there and carried the loud speaker used to broadcast union propaganda. Local 107 signs usually hung near his car and on at least two days a Local 107 business agent stood close to his car. These pictures also indicate that from May 12 to May 30 Brown was present in the vicinity of the picket line on five days. On several of these days a business agent of Local 107 was present too and on one of these occasions Brown was apparently talking over the union loud speaker. Brown's car occasionally carried this loud speaker and he talked over it many times. At least one of his speeches was sharply critical of Horn & Hardart management and employment policies.

One other incident is worth mention. On June 7 the Philadelphia police stopped a car which had for several blocks followed a truck coming out of the Horn & Hardart commissary. The car belonged to Brown, was occupied by five men, and was driven by Zoroiwchak.

It is true that Local 107 was not the only union picketing the Horn & Hardart establishment during the times in question here. Three others were involved, not as rivals, but seeking to unionize the portion of the company's activities with which they were respectively concerned. In the photographs the 107 signs are the most conspicuous and most numerous. While there is no evidence as to what Zoroiwchak was paid, if he was paid, or who paid him, we cannot believe he was merely loafing about at the Horn & Hardart plant as an interested spectator or that he merely went along for the ride on the trips to the other establishments above described. The district court found as a fact that Zoroiwchak and Brown represented Local 107. That finding is not inconsistent with the picketing unions being engaged in a joint enterprise so that a representative of one was a representative of all.

In either event, the finding is not clearly erroneous.

Our next, and less difficult, consideration involves the unions representing the employees at Industrial and American Sugar, the Warehouse Employees Union, Local 169 and the Sugar Refinery Workers, Local 1650. The trial judge found that there was reasonable cause to believe that these locals or their agents had "encouraged" or "induced" the employees which they represented to refuse to load Horn & Hardart trucks. Are these findings clearly erroneous? Here is the evidence:

Prior to May 6 the union shop steward at Industrial told the company president that the men would not handle anything stored in the warehouse for the account of Horn & Hardart. On May 6 the steward learned that a Common Pleas Court in Philadelphia had issued a writ of replevin for a carload of Horn & Hardart meat. He telephoned a Local 169 business agent. And the agent informed the Industrial president that if the meat were delivered to the sheriff the men would go out on strike. When the sheriff arrived at Industrial with a truck, he was warned by the President of Local 169 that a strike would be called the minute anything went out. The President of Local 169 permitted the unloading of an incoming truck but after that "shut the place down." Subsequently he advised an officer of Industrial that if an attempt were made to get the meat on the following day, he would call out the engineers who operated the refrigerating system. No attempt was made.

Counsel for Local 169 argues that the decision not to load was initiated by the men themselves and that there is no reason to believe that Local 169 or its agents "induced" or "encouraged" that decision. He points to the fact that prior to May 6 the men through their shop steward had already indicated that they would not handle Horn & Hardart food. We find no merit in this argument. It was the Local 169 business agent to whom the steward turned when he learned about the writ of replevin. And it was the Local 169 president who took the leading role in the strike.

A similar argument on behalf of Local 1650 is equally untenable. After the Horn & Hardart truck arrived at American Sugar, two unidentified men approached the shipping clerk employed by the warehouse and told him not to load the truck. The same order was repeated to the union steward, apparently by Zoroiwchak. The steward replied that the president or the business agent of Local 1650 were the men to see about a work stoppage. And he took Zoroiwchak to the business agent. Later the agent and the president told the company personnel manager that if the truck was not loaded it would be because it was not manned by a union driver. They next stated to the foreman of the shipping department that they would not load the non-union truck. They then informed the shipping clerk, who had made no effort to load the truck, that the Horn & Hardart driver was not a union man. The clerk and his fellow employees without any direct command from Local 1650 refused to load the truck. It was a long standing practice not to load nonunion trucks although apparently no such refusal had occurred during the prior two-and-a-half-years.

■ Here again we think there is sufficient evidence to support a finding of reasonable cause to believe that the local or its agents "encouraged" or "induced" a "concerted refusal" by the shipping clerk and his fellow employees. The steward indicated that any decision would be made by certain union officials. These officials made their decision and communicated it to the clerk, by inference, if not by direction.

■ On the matter of relief two points are raised. The first has to do with the application of the injunction to "any other employer or person" in addition to acts forbidden with regard to employees of the Industrial Cold Storage & Warehouse Company, the American Sugar Refining Company and The Great Atlantic & Pacific Tea Company. This

may be disposed of rather shortly in a manner adverse to the appellants. There is a finding of fact by the trial court to the effect that it may be fairly anticipated that unless enjoined the acts and conduct of the appellants will be repeated. This settles the situation factually. So far as the legal point is concerned it was threshed out by Chief Judge Biggs for this Court in Schauffler v. United Association of Journeymen, 1955, 218 F.2d 476. And issuing of an injunction after the particular act complained of had ceased is covered both by this decision and by our own holding in Shore etc. v. Building & Construction Trades Council, 1949, 173 F.2d 678.

The second point raised in attacking the scope of the relief granted has to do with a notice which the regional director asks to have the defendants ordered to give. On August 22, 1955, we granted supersedeas as to this part of the injunction until argument could be heard on the merits. The impression we had at the time of granting supersedeas is strengthened by further consideration of the point involved. The notice submitted for the appellants to sign and post starts out to the effect that "[w]e hereby rescind and withdraw any strike calls, orders * * * heretofore issued to induce or encourage the employees of the above-named employers or any other employer to engage in a strike * * *" and so forth. The notice is as cluttered up with useless verbiage as an old-fashioned deed but we are not refusing an order to post it for that reason.

█ The reason is that we think such a notice is too strong medicine at this stage of the litigation. The case of these unions has not been adjudicated on the merits. All the trial judge had to find was reason to believe that certain unlawful acts had taken place and would take place. He did so find. But implicit in the notice is the agreement to rescind and withdraw certain unlawful strike calls and the like and a promise to be good in the future. It is like having a man post a notice that he will stop beating his wife. The confession of previous wrong-doing is implied in the very form of statement. When this case is heard on the merits it may, or may not, be that the labor board will find the respondent unions guilty of conduct forbidden by the statute. If the board so finds, it has power to exercise its discretion in giving appropriate relief and the posting of a notice has been for many years a part of such relief. At the present time it is inappropriate to compel the respondents to confess by implication a violation of the statute of which they have not been found guilty.

The judgment of the district court will be affirmed with the modification that the order for posting a notice will be deleted.

