258 F.2d 698
 AMERICAN FEDERATION OF RADIO AND TELEVISION ARTISTS, AFL-CIO and Cincinnati Local, American Federation of Television and Radio Artists, AFL-CIO, Appellants,
v.
John C. GETREU, Regional Director of the Ninth Region of the National Labor Relations Board, for and on Behalf of the National Labor Relations Board, Appellee.
 No. 13518.
 United States Court of Appeals Sixth Circuit.
 September 5, 1958.
 
 Milton H. Schmidt, Cincinnati, Ohio, James G. Andrews, Jr., Jonas B. Katz, Cincinnati, Ohio, on brief, for appellants.
 Samuel Ross, Washington, D. C., Jerome D. Fenton, Thomas J. McDermott, Winthrop A. Johns, Morton D. Friedman, Washington, D. C., on brief, for appellee.
 J. Mack Swigert, Cincinnati, Ohio, Chas. D. Linberg, Cincinnati, Ohio, on brief, for charging party, The L. B. Wilson, Inc.
 Before MARTIN, MILLER and STEWART, Circuit Judges.
 STEWART, Circuit Judge.
 
 
 1
 This appeal is from a district court order granting a temporary injunction under § 10(l) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(l), on a petition filed by the Regional Director of the Ninth Region of the National Labor Relations Board against the American Federation of Television and Radio Artists (AFTRA), and its Cincinnati local. The petition alleged that charges had been filed with the Board by an employer, the operator of Cincinnati radio station WCKY, alleging that AFTRA and the local union had engaged in unfair labor practices within the meaning of § 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A), and that after investigation the petitioner had reasonable cause to believe that the unions had engaged in such unfair labor practices. The unions answered, denying any conduct proscribed by § 8(b) (4) (A) of the Act. After a hearing the district court made findings and conclusions and granted the injunction as prayed, "pending the final disposition of the matters here involved pending before the National Labor Relations Board."
 
 
 2
 At the outset we emphasize the limited scope of our function on this appeal. Section 10(l) of the Act requires that the district judge, as a prerequisite for the issuance of a temporary injunction, need only find that there is reasonable cause to believe that a violation of § 8(b) (4) (A) of the Act as charged has been committed.[1] Schauffler v. Highway Truck Drivers & Helpers, 3 Cir., 1956, 230 F.2d 7, 9; Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, 537; Douds v. International Longshoremen's Ass'n, 2 Cir., 1957, 242 F.2d 808, 810. "The District Court was not required to make final or even preliminary findings as to the truth or falsity of the facts alleged in the petition of the Director." Douds v. Milk Drivers and Dairy Employees Union, 248 F.2d at page 537. Review here is further confined by Rule 52(a), F.R.Civ.P., 28 U.S.C.A., to determining whether the district court's finding of reasonable cause was clearly erroneous. Resolution of the actual merits of the controversy is left for administrative determination by the Board, subject to subsequent review here in the event enforcement is sought. Schauffler v. Highway Truck Drivers & Helpers, 230 F.2d at page 9.
 
 
 3
 This controversy had its genesis in a strike against radio station WCKY in Cincinnati, which was called by the appellant unions on August 28, 1957, because of WCKY's refusal to accede to the bargaining demands of employees of the station who were represented by the appellants. To increase the economic impact upon WCKY the unions embarked upon a campaign to induce sponsors and advertising agencies to cease doing business with that station.
 
 
 4
 Section 8(b) (4) (A) makes it an unfair labor practice for a labor organization "to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment * * * to perform any services, where an object thereof is * * * forcing or requiring * * * any employer or other person * * * to cease doing business with any other person." There is no question but that if the appellant unions had confined their efforts to inducing other employers not to deal with WCKY they would have been guilty of no violation of § 8(b) (4) (A) of the Act. See N.L.R.B. v. Local 11, 6 Cir., 1957, 242 F.2d 932, 935. The court found, however, that there was reasonable cause to believe that the appellant unions had induced or encouraged their members who were employees of advertising agencies or sponsors to engage in a concerted refusal in the course of their employment to make commercial transcriptions for broadcast on WCKY, with the object of forcing or requiring the secondary employers to cease doing business with the station.
 
 
 5
 Although the record is confused and contradictory, we cannot hold that such a finding was clearly erroneous. The executive secretary of the local union sent a letter to all members with the following included paragraph:
 
 
 6
 "National AFTRA has notified all national makers of transcriptions and all AFTRA members in major cities that no transcriptions may be made by any member without a written statement from agency or producer that such transcriptions will not be used on UNFAIR WCKY. All members are hereby notified of this order."
 
 
 7
 A letter by the same person to the same addressees went out on January 6, 1958, after the petition for an injunction in this case had been filed, claiming the above quoted statement to have been made in error, and stating that the error had been corrected by a letter from the national union shortly following the original mailing. There is testimony in the record, however, which, if believed, would indicate that the original letter did not represent an error, but was indeed a correct statement of the facts as they then existed. There is also testimony which could support a conclusion that Gil Shepard, a disc jockey, was threatened with dismissal from the union if he should continue to permit his transcribed programs to be broadcast by WCKY, and that his agency and sponsor for this reason discontinued doing business with WCKY. In less detail, there was evidence that other recording artists were induced to refuse to make transcriptions for use by the station.
 
 
 8
 The appellants contend, however, that even assuming they encouraged or induced their members not to make transcriptions, the terms of the statute are inapplicable for two reasons. First, they say that the union members here involved were independent contractors and not employees within the meaning of the Act, and that there could not, therefore, be an inducement "in the course of their employment." Secondly, they argue that there was in any event no inducement of a concerted refusal, but only of individual refusals to perform services.
 
 
 9
 It is true that the evidence showed that the union members who were the objects of the alleged inducement were not, with one exception, continuously employed by one employer. They were employed by sponsors and advertising agencies for limited periods to do specific jobs. It follows, the argument runs, that they could not have been induced to refuse to perform services in the course of their employment, but only to refuse to accept any employment which involved making transcriptions to be used by WCKY. Support for this position is found in Joliet Contractors Ass'n v. N.L.R.B., 7 Cir., 1953, 202 F.2d 606, 608, certiorari denied 346 U.S. 824, 74 S.Ct. 40, 98 L. Ed. 349, where it was held that the refusal of union glaziers to accept employment on projects where pre-glazed glass was to be used did not constitute a concerted refusal "in the course of their employment."
 
 
 10
 In at least two cases, however, the Board has found that despite the absence of continuous employment by one employer, the employment relationships peculiar to an industry had such "characteristics of certainty and continuity" as to make those concerned "employees" within the meaning of § 8(b) (4) of the Act. Charleston Stevedoring Co., 118 N.L.R.B. 920, 925; United Marine Division, Local 333, 107 N.L.R.B. 686, 708-709. Whether such relationships existed in the present case is a question to be resolved in the first instance by the Board. Unless this court should hold that nothing short of a continuous employment relationship can suffice, the Board should be allowed to determine whether the present situation is more akin to the Longshoremen's cases than to the Joliet Contractors case.
 
 
 11
 As to the appellants' second contention, we do not interpret N.L.R.B. v. International Rice Milling Co., 1951, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277, upon which the appellants rely, as holding § 8(b) (4) (A) necessarily inapplicable where the inducement is of numerous individual employees of many employers, rather than of employees of one employer. There was evidence here of inducement of the kind of concerted action which was the subject of the court's decision in Amalgamated Meat Cutters and Butcher Workmen, etc. v. N.L.R.B., 1956, 99 U.S.App.D.C. 24, 237 F.2d 20, certiorari denied 352 U.S. 1015, 77 S.Ct. 556, 562, 1 L.Ed.2d 545. The court said in that case: "In the instant case, however, the appeals were to the employees as members of a group, encouraged parallel action, and were not incidental to primary picketing. It would be artificial to say that the Union did not encourage a unity of effort, and therefore concerted action, on the part of the employees. We think this type of inducement is designed to secure concerted conduct and does not fall within the scope of the Rice Milling decision." 237 F.2d at page 24.
 
 
 12
 That WCKY was being divested of certain advertising accounts was clearly shown. The conduct of the appellant unions was of a type probable to continue. That being the case, it cannot be said that the district judge abused his discretion in granting injunctive relief.
 
 
 13
 We end as we began, by pointing to the narrow confines of our reviewing power in this case. "This Court cannot, and should not try to, usurp the function and duty of the Board. Nor should it endeavor to speculate on the law or facts which may eventually underlie the Board's decision." Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, at page 538. Thus confined in our consideration of this appeal, and without adopting or approving all of the findings and conclusions of the district court, we affirm the order granting a temporary injunction.
 
 
 
 Notes:
 
 
 [1]
 "(l) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *." 29 U.S.C.A. § 160(l).