**CORRUGATED ASBESTOS CONTRACTORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 71-2331.

United States Court of Appeals, Fifth Circuit.

April 14, 1972.

Sidney W. Provensal, Jr., New Orleans, La., for petitioner.

Victor H. Hess, Jr., New Orleans, La., Donald W. Fisher, Toledo, Ohio, for intervenor, Sheet Metal Workers International Ass'n., etc.

Charles M. Paschal, Jr., Regional Director, NLRB, Region 15, New Orleans, La., Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Michael S. Winer, Atty., NLRB, Washington, D.C., for respondent.

Before RIVES, COLEMAN and DYER, Circuit Judges.

DYER, Circuit Judge:

Corrugated petitions for review of a Board order dismissing the company's unfair labor practice charges filed against Sheet Metal Local 11 under the Labor Management Relations Act.[1] The heart of the company's charge is that the union, by refusing to renew its collective bargaining agreement with the company, and later disclaiming representation of the company's sheet metal employees, attempted to coerce the company in a jurisdictional dispute over the assignment of union craft work, in violation of Section 8(b) (4) (D) of the Act.[2] We have concluded that the charges were properly dismissed and accordingly deny the petition for review.

The company is engaged in engineering, finishing, fabricating, and installing industrial sheeting accessories. During the period in dispute, the company had four employees who fabricated sheet metal components at the company's New Orleans plant. They were represented by Local 11 of the Sheet Metal Workers International Association, and their work was covered by a collective bargaining agreement between the company and the Local, with a May 31, 1969 expiration date. The company had other employees who installed sheet metal siding on buildings at job sites throughout

---

1. 29 U.S.C.A. § 141 et seq.

2. Section 8(b) (4) (D) provides that it shall be an unfair labor practice for a labor organization or its agents—
    (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:
    &ast; &ast; &ast; &ast; &ast;
    (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.
    29 U.S.C.A. § 158(b) (4) (1964).

the country. They were represented by the Iron Workers Union under another collective bargaining agreement.

In late 1967 Corrugated was awarded a contract to install a certain type of corrugated metal siding on a building under construction in Kansas City, Missouri. As was its custom it awarded the installation work to employees represented by the Iron Workers Union. Because of the width of the corrugations in the siding to be installed, Local 11's sister union in Kansas City, Local 2, took the position that the installation of this siding fell within its jurisdiction and accordingly demanded that the company reassign the work. When Corrugated refused, Local 2 filed a grievance with the Kansas City Joint Adjustment Board for the Sheet Metal Industry (Kansas Board) which on January 10, 1968 upheld Local 2.

Corrugated promptly appealed this determination to the National Joint Adjustment Board for the Sheet Metal Industry (National Board) which on June 27, 1968 sustained the Kansas Board. The National Board ordered that in the future all work of the kind in dispute must be assigned to sheet metal workers and that noncompliance would result in automatic termination of Corrugated's contract with Local 11. Corrugated refused to comply. The National Board entered an order on December 13, 1968 declaring the collective bargaining agreement between the company and Local 11 canceled. On May 8, 1969, Local 11 notified Corrugated that in accordance with the directive and order of the National Board its contract would be cancelled as of its current expiration date, May 31, 1969, and would not be renewed unless and until the company complied with the directive of the National Board. The President of Local 11 further notified his members at Corrugated not to continue work following the expiration of the contract. The sheet metal workers complied until they were forced to return to the job by order of the United States District Court in September of 1969.

On May 29, 1969, Corrugated filed with the National Labor Relations Board a charge that Local 11 had violated Section 8(b) (3) [3] of the Act by refusing to bargain with the company, and Section 8(b) (4) (D), by using its contract cancellation and refusal to bargain as a means of coercing Corrugated into assigning the work in dispute to the sheet metal workers represented by Local 2.

In accordance with Section 10(1) of the Act, the Board's Regional Director, having found reasonable cause to believe that Local 11 had violated the Act as charged, instituted proceedings in the United States District Court for the Eastern District of Louisiana seeking a temporary injunction against Local 11 engaging in the type of conduct prohibited by 8(b) (4) (D). On September 4, 1969, the District Court concluded that there was reasonable cause to believe that a violation of § 8(b) (4) (D) had occurred and issued an injunction pending disposition of the unfair labor practice charges by the Board. Paschal for and on behalf of N.L.R.B. v. Sheet Metal Workers International Association, Local Union No. 11, E.D.La.1969, 304 F.Supp. 684.

In accordance with § 10(k) of the Act the Board undertook to "hear and determine the dispute out of which [the] unfair labor practice" arose.[4] On February 13, 1970, the Board issued its "Decision and Determination of Dispute", holding that there was reasonable cause to believe that Local 11 had engaged in action directed to forcing the assignment of work to sheet metal employees, in violation of § 8(b) (4) (D), and that

3. Section 8(b) (3) provides that it shall be an unfair labor practice for a labor organization or its agents—

to refuse to bargain collectively with an employer, provided it is the representative of his employees . . . ;
29 U.S.C.A. § 158(b) (3) (1964).

4. 29 U.S.C.A. § 160(k) (1964).

the dispute was appropriately before the Board on an unfair labor practice charge. The merits of the jurisdictional dispute were resolved in Corrugated's favor, the Board holding that the union was "not entitled by means proscribed by Section 8(b) (4) (D) of the Act" to force Corrugated to assign the disputed work to the Sheet Metal Workers' International or any of its local unions. The union immediately notified the Board's Regional Director that it would refrain from the prohibited conduct, but refused to enter into collective bargaining negotiations with the company for the renewal of the contract that had expired. Furthermore, on March 30, 1970, Local 11 notified Corrugated by letter that it disclaimed any further interest in the representation of Corrugated's employees.

In October of 1970, an unfair labor practice hearing was held on the company's § 8(b) (3) and § 8(b) (4) (D) charges. In his decision of January 6, 1971, the trial examiner first focused upon the actions of the union prior to the issuance of the 10(k) determination. He found that by cancelling and refusing to renew its collective bargaining agreement with Corrugated the union intended to force the company to assign the disputed work to employees it represented, a clear violation of § 8(b) (4) (D). He further found a violation of § 8(b) (3) based upon the union's refusal to bargain collectively with Corrugated, but held that since § 8(b) (4) (D) covered conduct also violative of § 8(b) (3) in these circumstances, his attention need be directed only to the all inclusive § 8(b) (4) (D) violation.

The trial examiner was then called upon to determine whether the union had complied with the Board's Decision and Determination of Dispute, for if it had done so the matter was at an end. Compliance with the Board's decision in a 10(k) proceeding vitiates any pre-de-termined violation of § 8(b) (4) (D), for Congress designed such a procedure to allow the opportunity for settlement of labor disputes within the labor community before a complaint would issue under the initial charge.[5] Considering then the post-10(k) determination period, the examiner found that the 10(k) order required the union to accept Corrugated's offer to sign a contract with Local 11 on the same terms as other union crafts in the New Orleans area. Since the union had not signed such a new contract, the examiner found that the 10(k) determination had not been complied with, and thus a violation of § 8(b) (4) (D) continued to exist.

Finally, the examiner considered the effect of the union's disclaimer of representation a few weeks after the 10(k) determination. While recognizing that an effective disclaimer by the union would have constituted a defense "to respondent's refusal to enter into a collective bargaining agreement with Corrugated and respondent's failure, thereby, to comply with the Decision and Determination of dispute," he held that the disclaimer was not made in good faith and was ineffective. Relying upon the Board's decision in Texlite, Inc., 119 N. L.R.B. 1796, enforced, N.L.R.B. v. International Brotherhood of Electrical Workers, AFL–CIO, and Local 59, 5 Cir. 1959, 266 F.2d 349, the trial examiner found Local 11's continued treatment of the sheet metal employees at Corrugated's plant as union members, and continued acceptance of employer welfare contributions so inconsistent with a disclaimer as to destroy any aura of good faith on the part of the union.

In the union's exceptions to the trial examiner's decision filed on February 3, 1971, it contended that it had complied with the order issued in the 10(k) proceeding, that the order did not require it to sign a collective bargaining agreement, that it in good faith disclaimed

5. See Texas Contracting Company et al., 166 N.L.R.B. 869, 870 (July 27, 1967), enf'd N. L. R. B. v. International Longshoremen's Ass'n, 5 Cir. 1969, 409 F.2d 709; New York Times Company, 154 N.L.R.B. 1122, 1124 (September 10, 1965).

representation of Corrugated's employees, and that such disclaimer was a defense to the § 8(b) (3) refusal to bargain charge.

The Board agreed with the union. It rejected the trial examiner's finding that the Decision and Determination of Dispute following the 10(k) hearing required the union to execute a collective bargaining agreement with Corrugated. The Board further found that the union's disclaimer was effective, and thus justified a refusal by the union to bargain following the 10(k) determination.

After Corrugated's long and parlous journey to obtain relief, which we have recited in some detail, we are, at this juncture, confronted with only one issue. Was the union's disclaimer effective? Only if it was effective could there be justification for the continued refusal of the certified bargaining representative of Corrugated's sheet metal workers to negotiate over a new contract, especially in light of the possibility for coercion in the circumstances of the jurisdictional dispute that overshadows these events. Without the disclaimer the union would have been guilty of an unlawful failure to bargain, in violation of 8(b) (3), which would, under the circumstances of this case, also be coercive conduct violative of 8(b) (4) (D), and hence a patent violation of the Board's 10(k) order.

■■ While we have a sympathetic ear to Corrugated's plea that as a result of the union's action, after an amicable relationship of ten years, Corrugated will be unable to hire union sheet metal workers not only in New Orleans but anywhere in the country, we have concluded that the Board's determination that the union's disclaimer was in good faith and effective is supported by substantial evidence on the record as a whole and is therefore entitled to our approval. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Our determination is based upon logical inferences from the testimony of the union's business agent, and the continued and adamant disclaimer by the union at all times during the controversy. The agent testified that the disclaimer was made because the union did not want to become continuously embroiled in the type of jurisdictional disputes that exist here, disputes that they felt were certain to continue in their relationship with Corrugated. He simply said that the union wanted out. The trial examiner found that this statement was inconsistent with a good faith disclaimer. The Board disagreed with this inference and so do we. There is nothing to establish bad faith in the union's desire to avoid further 10(k) disputes with the company. We cannot force a union to continue, against its wishes, a relationship that is in its very nature predicated upon voluntariness and consent. *See* H. K. Porter Co. v. N.L.R.B., 1970, 397 U.S. 99, 102–109, 90 S.Ct. 821, 25 L.Ed.2d 146.

We agree with the Board that *Texlite Inc., supra,* is inapposite. There the union's position was entirely inconsistent with its disclaimer, because it continuously indicated that it was willing to contract if the employer would accede to its terms. There was no trace of the continued and adamant insistence on disclaiming that is present here. We can find nothing in the record to challenge the Board's finding that the union's actions in continuing to treat Corrugated's employees as members, and accepting Corrugated's contributions covering employee-members' benefits were done, upon advice of its attorney, to comply with the court injunction.

Petition denied.