**Bernard GOTTFRIED, Regional Director of the Seventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Plaintiff–Appellant,**

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 80, et al., Defendants–Appellees.**

No. 88–1757.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1989.

Decided May 23, 1989.

Rehearing and Rehearing En Banc Denied Aug. 18, 1989.

---

Joseph E. Mayer, Asst. Gen. argued, John W. Hornbeck, Deputy Asst. Gen., N.C.R.B., Office of the General Counsel, Kevin Mulshine, Washington, D.C., for plaintiff-appellant.

Samuel C. McKnight (argued), Southfield, Mich., Donald W. Fisher (argued), Donald W. Fisher Co., L.P.A., Toledo, Ohio, Donald J. Prebenda, Klimist, McKnight, Sale & McClow, P.C., Southfield, Mich., for defendants-appellees.

Before ENGEL, Chief Judge, and MERRITT and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The secondary boycott provisions of the federal labor laws make it an unfair labor practice for a union to take coercive action against one employer with the object of forcing another employer to recognize a labor organization not certified as the bargaining representative of the second employer's work force. 29 U.S.C. § 158(b)(4)(ii)(B). In the case at bar the appellee unions allegedly took such action against Limbach Company, a construction industry employer, by refusing to bargain with Limbach over the renewal of a certain "prehire" collective bargaining agreement and by threatening Limbach's employees with sanctions if they continued working for Limbach after the scheduled expiration of the agreement. The unions' objective, allegedly, was to put pressure on Harper Mechanical Corporation, a sister company of Limbach, to sign a labor agreement with a union that had not been certified.

In the absence of any such improper objective, it is clear that the unions would have been free to terminate their bargaining relationship with Limbach upon the expiration of the prehire agreement. But Limbach filed unfair labor practice charges predicated on a claim that the unions' termination of the relationship did in fact have an improper objective, and the regional director of the National Labor Relations Board decided that there was reasonable cause to believe that this was true and that the termination constituted an unfair labor practice. The director sought a federal court injunction pursuant to § 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*), pending final adjudication of the unfair labor practice charges by the Board.

The NLRB has endorsed the general principle that upon expiration of a prehire agreement in the construction industry, either party may repudiate the bargaining relationship. The district court concluded, in light of this principle, that even assuming that the unions had engaged in coercive action against Limbach with the object of forcing Harper to recognize a non-certified union, the court would have no power, as a matter of law, to grant an injunction under § 10(*l*). Although the statute gives the district court "jurisdiction to grant such injunctive relief or temporary restraining

order as it deems just and proper, notwithstanding any other provision of law," the court recognized that it would be inappropriate to grant injunctive relief *pendente lite* if the regional director's finding of reasonable cause for belief that there had been a violation of the secondary boycott provisions of the Act was based on "[nothing] more than a frivolous legal theory...." The district court denied the petition for injunctive relief because it found that the regional director's legal theory was purely frivolous.

We disagree with that finding. Although we recognize that the theory may ultimately be rejected by the NLRB, we do not consider it frivolous; the NLRB could well conclude, we believe, that an action normally lawful may be unlawful if undertaken to accomplish a forbidden objective. The district court had jurisdiction to grant injunctive relief pending final adjudication by the Board, in our opinion, and we shall remand the case to the district court for such further proceedings as may be appropriate.

I

On May 25, 1988, appellant Bernard Gottfried, a regional director of the NLRB, filed in the United States District Court for the Eastern District of Michigan a "Petition for Injunction under Section 10(*l*) of the National Labor Relations Act, as Amended." Because of the posture in which this case comes before us on appeal, we must, for present purposes, accept the allegations of the petition as true. Among the allegations are these:

Limbach Company, a mechanical contractor engaged in various construction projects in Michigan, belonged to the Metropolitan Detroit Chapter of the Sheet Metal and Air Conditioning National Association. Through its association membership, Limbach was a party to a collective bargaining agreement negotiated by the association with Local No. 80 of the Sheet Metal Workers' International Association, AFL–CIO. By its terms, the agreement in question was effective from June 1, 1985, through May 31, 1988. At no time material

to this case was there any labor dispute between Limbach and the unions.

■ Harper Mechanical Corporation is a mechanical contractor engaged in various construction projects in Florida. Harper is a wholly-owned subsidiary of a corporation owned by the same parent company of which Limbach is a subsidiary. Notwithstanding this relationship, Limbach and Harper are separate "persons" within the meaning of the secondary boycott provisions of the National Labor Relations Act.

Local No. 80 and the international union of which it is an affiliate had a labor dispute with Harper. The dispute arose from Harper's refusal to recognize the international union or its affiliates as the collective bargaining representative of Harper's employees, and from Harper's refusal to sign a collective bargaining agreement with the unions.

With the object of forcing Harper to sign such a collective bargaining agreement, Local No. 80 notified Limbach on February 29, 1988, that when the collective bargaining agreement to which Limbach was a party expired at the end of May, the union "would disclaim its interest in representing Limbach Company's employees, and would not bargain collectively nor execute a collective bargaining agreement with Limbach Company thereafter."

The local union informed its members that Limbach would not have a labor agreement after May 31, and implied that any member who continued to work for Limbach after that date would be subjected to sanctions. A representative of the international union had previously announced sanctions and penalties to be imposed on union members who continued to work for Limbach after the collective bargaining relationship ended.

The effect of these actions was to deprive Limbach of its complement of current employees as of June 1, 1988, thereby preventing or slowing completion of construction projects on which Limbach was engaged in Michigan. The unions' actions "coerced" Limbach, and the object of the coercion was to force Limbach's sister com-

pany, Harper, to make its peace with the unions.

The petition noted that Limbach had filed unfair labor practice charges with the NLRB. The petition further stated that the regional director had reasonable cause to believe that insofar as Limbach was charging a violation of the secondary boycott provision contained in § 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(B)(4)(i) and (ii)(B), the charges were true.

Anticipating that the Board would issue a complaint against the unions on Limbach's unfair labor practice charges, and expressing a belief that injunctive relief would be just and proper pending the Board's final disposition of the charges, the regional director asked the district court to grant such relief under § 10($l$) of the Act, 29 U.S.C. § 160($l$). The court was asked to enjoin the unions from, among other things, engaging in a strike against Limbach, imposing sanctions or penalties against union members for continuing their employment with Limbach, refusing to bargain with Limbach, and disclaiming interest in representing Limbach's employees, the injunction to be effective only insofar as "an object of said acts and conduct is to ... force Harper Mechanical Corporation or any other employer to recognize or bargain with [the unions] as the representative of its employees unless such labor organization has been certified as the representative of such employees under the provisions of Section 9 of the National Labor Relations Act...."

Shortly after the filing of the petition the district court conducted a hearing on the question whether, assuming that the regional director's contentions concerning a secondary boycott were true, the court had power to issue the injunction. At the conclusion of the hearing the court decided, in a ruling announced from the bench, that in light of *John Deklewa & Sons, Inc.*, 282 N.L.R.B. No. 184, 124 LRRM 1185 (Feb. 20, 1987), *enforced sub nom. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770 (3rd Cir.), *cert. denied*, —

U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988); *Yellowstone Plumbing Inc.*, 286 N.L.R.B. No. 93, 128 LRRM 1030 (Nov. 20, 1987); and *Corrugated Asbestos Contractors, Inc. v. NLRB*, 458 F.2d 683 (5th Cir. 1972), the unions had an absolute right to repudiate their collective bargaining relationship with Limbach upon the expiration of the labor contract regardless of the object of the repudiation. The contrary theory, the district court decided, was so lacking in merit that the regional director could not properly have found reasonable cause to believe that the unions had committed an unfair labor practice. Injunctive relief would therefore not be "appropriate" or "just and proper" within the meaning of those terms as used in § 10($l$) of the Act, the court concluded, and the petition for an injunction was denied for want of power to grant it. The regional director perfected a timely appeal from the order of denial.

## II

Implicit in the district court's bench ruling was an understanding that in passing on a petition for an injunction *pendente lite* under § 10(j) of the National Labor Relations Act, a court is not required—and, indeed, is not authorized—to make a final determination as to the merits of the underlying unfair labor practice charge. That understanding is clearly correct. As we said in *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987), a § 10(j) case filed by the same regional director who is before us here, "the Regional Director need not convince the court of the validity of the Board's theory of liability, as long as the theory is substantial and not frivolous." (Citations omitted.) See also *American Federation of Radio and Television Artists v. Getreu*, 258 F.2d 698, 701 (6th Cir. 1958), where Judge Stewart, as he then was, emphasized that the courts should not try "to speculate on the law or facts which may eventually underlie the Board's decision." (Quoting *Douds v. Milk Drivers Union*, 248 F.2d 534, 538 (2d Cir.1957).) Unless the theory of liability is frivolous, the court's power to grant interim injunctive relief is undeniable.

The theory on which the regional director sought interim injunctive relief in the case at bar would not have been thought frivolous, in all probability, but for the fact that Limbach is an employer engaged primarily in the building and construction industry. Section 8(f) of the National Labor Relations Act, a provision peculiar to that industry, permits such employers to enter into "prehire" agreements, as they are popularly called, with building and construction unions the "majority status" of which has not been established under § 9 of the Act, 29 U.S.C. § 159. The collective bargaining agreement to which Limbach and Local No. 80 were parties constituted such an 8(f) prehire agreement, and the present controversy has arisen because of the unique characteristics of the 8(f) relationship.

Outside the building and construction industry, only unions designated or selected by a majority of the employees in an appropriate bargaining unit are entitled to function as exclusive representatives of the bargaining unit employees. See § 9 of the Act. As the Court of Appeals for the Third Circuit explained in granting enforcement of the Board's order in *John Deklewa & Sons, supra,*

"The majority status of a union as the exclusive representative of the employees, once established, is rebuttably presumed for a reasonable period of time. Upon the expiration of a collective bargaining agreement, the employer may not withdraw recognition of the union unilaterally unless it has reasonable, good faith grounds for believing that the union has lost its majority status." 843 F.2d at 772. (Footnotes and citations omitted.)

That principle does not obtain in the 8(f) situation. "[U]pon the expiration of [§ 8(f)] agreements," the Board declared in *Deklewa,* the rule is that "the signatory union will enjoy no presumption of majority status, and either party may repudiate the 8(f) bargaining relationship." 124 LRRM at 1187. Section 8(f) prehire agreements, as the Third Circuit explained the Board's decision in *Deklewa,* "could not be converted into traditional collective bargaining

agreements with lingering rights and obligations absent an election and certification." 843 F.2d at 775.

No election and certification occurred in the case at bar, so under *Deklewa* it is clear that as a general proposition, at least, Limbach would have been free to repudiate its bargaining relationship with the union upon the expiration of the prehire agreement, just as the union would have been free to repudiate the relationship at that point. See *Yellowstone Plumbing, Inc.,* 128 LRRM 1030, 1031, *supra:*

"In our recent decision in *John Deklewa & Sons,* we held that in cases involving bargaining relationships arising under Section 8(f) of the Act either party may repudiate upon contract expiration." (Footnote omitted.)

May either party repudiate the bargaining relationship where the object of the repudiation is one forbidden by the National Labor Relations Act itself? The Board clearly did not decide that question in *Deklewa,* and we doubt that it did so in *Yellowstone Plumbing* either.

*Yellowstone Plumbing* was a case where during a period when an 8(f) prehire agreement was in effect between a plumbing contractor and a union, the employer unlawfully encouraged an effort to have the union decertified. That effort had not succeeded by the time of contract expiration, but once the contract expired the employer withdrew recognition, refused to bargain, and unilaterally changed the wages and working conditions of the bargaining unit employees. The NLRB's general counsel argued that the employer was precluded from repudiating the bargaining relationship, notwithstanding *Deklewa,* because the repudiation "was tainted by bad faith...." The Board rejected this argument: "Although we agree that the [employer] unlawfully encouraged the decertification effort, that misconduct does not warrant an exception to our policy under *Deklewa.*" 128 LRRM at 1031.

■ Under the principle that what is sauce for the goose ought to be sauce for the gander, we assume that if an employer

is free to repudiate an 8(f) bargaining relationship for the purpose of accomplishing an illegal objective, a union ought to be free to do the same thing. As we read *Yellowstone Plumbing*, however, there was nothing illegal about the employer's objective in repudiating the bargaining relationship once the prehire agreement had expired. Under the regional director's theory in the case at bar, by contrast, the object of the repudiation was illegal, and the repudiation itself was an unfair labor practice. We must take it as given, in this case, that the object of the unions' termination of the bargaining relationship with Limbach Company was to coerce Harper, through coercion of Limbach, into granting recognition to a noncertified union. If that was in fact the object of the economic pressure the unions were putting on Limbach by refusing to deal with it, we find it hard to see why the regional director is not correct in suggesting that the unions were violating the secondary boycott provisions of the National Labor Relations Act.[1]

In *Corrugated Asbestos Contractors, Inc. v. NLRB*, 458 F.2d 683 (5th Cir.1972), the NLRB found, on facts disclosed at an agency hearing, that a sheet metal workers' union did not act in bad faith by refusing to negotiate with an employer over renewal of an expired labor agreement, and did not act in bad faith by disclaiming representation of the company's employees. A trial examiner had previously found that the sheet metal workers' union was trying to force the company to assign work to employees represented by that union, rather than to employees represented by another union. This would have been a clear violation of § 8(b)(4) of the Act, but the Board found as a factual matter that no such violation had occurred. The Fifth Circuit concluded that the Board's finding of good faith on the part of the union "is supported by substantial evidence on the record as a whole and is therefore entitled to our approval." *Id.* at 687. The court

went on to say that "[t]here is nothing to establish bad faith in the union's desire to avoid further 10(k) disputes with the company," and in this context the court observed that "[w]e cannot force a union to continue, against its wishes, a relationship that is in its very nature predicated upon voluntariness and consent." *Id.*

It does not follow from *Corrugated Asbestos* that a union would be free to walk away from an established relationship with its members or their employer as a means of committing an unfair labor practice, any more than a union could walk away during the term of a valid collective bargaining agreement. The issue decided by the NLRB in *Corrugated Asbestos*—whether the union had in fact acted wrongfully in its repudiation and disclaimer—is an issue that the Board has not yet decided, of course, in the present situation.

When unfair labor practice charges were brought before the Board in *Corrugated Asbestos*, interestingly enough, the Board's regional director filed a federal court petition for interim injunctive relief under § 10($l$) of the Act. Concluding that there was reasonable cause to believe that a violation of the Act had occurred, the district court "issued an injunction pending disposition of the unfair labor practice charges by the Board." 458 F.2d at 685. Nothing in the Fifth Circuit's opinion suggests in any way that the district court acted improperly or without authority in issuing the injunction, despite the fact that the Board ultimately determined that the union had not committed an unfair labor practice. If the Board should ultimately make a similar determination in the case at bar, that would not in itself suggest that the district court never possessed authority to issue a preliminary injunction under § 10($l$).

The secondary boycott provisions of the National Labor Relations Act "clearly reflect a Congressional attitude that unions should have no power over neutral employ-

---

1. Section 8(b)(4)(ii)(B) of the Act makes it an unfair labor practice for a labor organization or its agents to threaten, coerce, or restrain an employer where "an object thereof" is, among other things, "forcing or requiring any other employer to recognize or bargain with [an un- certified] labor organization...." To apply "economic retaliation or pressure in the background of a labor dispute" is to "coerce" within the meaning of that verb as used in the statute. *Sheet Metal Workers International Ass'n v. Hardy Corp.*, 332 F.2d 682, 686 (5th Cir.1964).

ers to compel secondary action." *NLRB v. International Bhd. of Elec. Workers*, 405 F.2d 159, 163 (9th Cir.1968), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1969). The right of a union unilaterally to terminate a contractual relationship for legitimate reasons, the court indicated in that case, does not extend to terminating for the purpose of applying economic coercion to achieve a prohibited secondary objective. *Id.* That is precisely the theory on which the regional director proceeded in the case at bar, and we see nothing frivolous about it.

Without indulging in speculation on what the Board may ultimately decide the applicable law and pertinent facts to be, we can say with some confidence that the regional director's theory of the case is sufficiently substantial to give the district court jurisdiction to consider the petition for interim injunctive relief on its merits. The order denying such relief is therefore VACATED, and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.